## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONALD J. STONE AND**<br>**DEBORAH L. STONE**<br>        **Plaintiffs**<br>   **vs.**<br><br>**SHAWN WALTMAN,**<br>**JAMES WOOL,**<br>**CORRECT CARE SOLUTIONS,**<br>**LLC, CORPORATE CREATIONS**<br>**NETWORK INC, WEXFORD**<br>**HEALTH SOURCES, INC,**<br>**CORIZON HEALTH, INC, LESLIE**<br>**BLAIR-MORRISON,**<br>**WENDY NICHOLAS, WILLIAM**<br>**FRANTZ, JOHN WETZEL,**<br>**MICHAEL SHIREY,**<br>**AARON BIICHLE,**<br>**ROBERT SMITH,**<br>**TYREE C. BLOCKER,**<br>**CHELSEY CAMP,**<br>**CHERYL BASKERVILLE**<br>        **Defendants** | **IN THE COURT OF COMMON**<br>**PLEAS**<br><br><br>      **CIVIL ACTION - LAW** |

## CIVIL COMPLAINT

AND NOW come Donald J. Stone and Deborah L. Stone, by and through

their Attorneys, Gregory T. Moro, Esquire and Hope R. Moro, Esquire and set forth a

Civil Complaint as follows:

1. The Plaintiffs are Donald J. Stone and Deborah L. Stone, adult individuals, husband and wife, currently residing at 545 Zaners Bridge Road, Stillwater, Columbia County, Pennsylvania 17878.

2. The Defendant is Shawn Waltman, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto the Chief Investigative Officer at The State Correctional Institution at Muncy (hereinafter "SCI Muncy).

3. The Defendant is James Wool, an adult individual with a business address of 899 Cherry Street, Montoursville, Pennsylvania 17754, who was at all times relevant hereto a Pennsylvania State Trooper.

4. The Defendant is Correct Care Solutions (hereinafter "CCS"), a limited liability corporation with a business address of 600 North 12th Street, Suite 1, Lemoyne, Pennsylvania 17043, which was at all times relevant hereto Dr. Stone's employer.

5. The Defendant is Corporate Creations Network Incorporated (hereinafter "Corporate Creations Network Inc."), a business corporation with a business address of 1001 State Street, Street #1400, Erie, Pennsylvania 16501, which was at all times relevant hereto Dr. Stone's employer.

6. The Defendant is Wexford Health Sources, Incorporated (hereinafter "Wexford Health Sources, Inc."), a business corporation with a business

address of 501 Holiday Drive, Pittsburgh, Pennsylvania 15220-2714, which was at all times relevant hereto Dr. Stone's employer.

7. The Defendant is Corizon Health, Incorporated (hereinafter "Corizon Health, Inc."), a business corporation with a business address of 105 Westpark Drive, Brentwood, Tennessee 37027-5319, which was at all times relevant hereto Dr. Stone's employer.

8. The Defendant is Leslie Blair-Morrison, an adult individual with business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, Dr. Stone's supervisor at CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and/or Corizon Health, Inc. and the Correctional Health Care Administrator (hereinafter "CHCA") at SCI Muncy. Defendant Blair-Morrison, at all times relevant hereto, was employed by the Pennsylvania Department of Corrections, SCI Muncy, CCS, Corporate Creations Inc., Wexford Health Sources, Inc., or Corizon Health, Inc.

9. The Defendant is Wendy Nicholas, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, the Deputy Superintendent for Facilities Management at SCI Muncy.

10. The Defendant is William Frantz, an adult individual, with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, the Prison Rape Elimination Act of 2003 (hereinafter "PREA") Officer at SCI Muncy.

11. The Defendant is Michael Shirey, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, a Correction's Officer at SCI Muncy.

12. The Defendant is Aaron Biichle, an adult individual with a business address of 48 West Third Street, Williamsport, Lycoming County, Pennsylvania 17701, who was at all times relevant hereto, an Assistant District Attorney of Lycoming County.

13. The Defendant is John Wetzel, an adult individual with a business address of 1920 Technology Parkway, Mechanicsburg, Pennsylvania 17050, who was at all times relevant hereto, the Secretary for the Pennsylvania Department of Corrections.

14. The Defendant is Robert Smith, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, the Superintendent of SCI Muncy.

15. The Defendant is Tyree C. Blocker, an adult individual with a business address of 1800 Elmerton Avenue, Harrisburg, Pennsylvania 17110, who was at all times relevant hereto, the Commissioner of the Pennsylvania State Police.

16. The Defendant is Chelsey Camp, an adult individual whose whereabouts are unknown, who was at all times relevant hereto, an Inmate at SCI Muncy.

17. The Defendant is Cheryl Baskerville, an adult individual whose whereabouts are unknown, who was at all times relevant hereto, an Inmate at SCI Muncy.

18. All of the above-referenced Defendants are being sued in their individual capacities under 42 U.S.C. §1983.

## **JURISDICTION**

19. This Court has jurisdiction over this matter pursuant to 42 U.S.C.A. §1331(a) and jurisdiction over the state claims pursuant to the Common Law Doctrine of Pendent Jurisdiction.

20. At all times relevant hereto, Dr. Donald Stone was a licensed physician in the Commonwealth of Pennsylvania.

21. At all times relevant hereto, the Dr. Stone was employed for the Pennsylvania Department of Corrections, at SCI Muncy, on a part time basis for a period of ten (10) years.

22. The Plaintiff, Donald Stone, executed an employment contract with CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc., healthcare providers, for employment as the Chief Medical Officer at SCI Muncy.

23. At all times relevant hereto, while participating in his duties as a physician at SCI Muncy, Dr. Stone received his salary and benefits in accordance with his contract with CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. until termination.

24. Dr. Stone was employed by CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. at SCI Muncy on a full-time basis as the Chief Medical Officer until June 3, 2015, at which time CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. terminated his employment.

25. During his term of full-time employment as the Chief Medical Officer with CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. at SCI Muncy, Dr. Stone oversaw all medical matters involving the SCI Muncy prison inmate population.

26. At all times relevant hereto, Leslie Blair-Morrison, who was not a licensed physician, was Dr. Stone's superior at SCI Muncy.  Blair-Morrison held a position referred to as the CHCA.

27. At all times relevant hereto, Leslie Blair-Morrison is believed to have been employed by the Pennsylvania Department of Corrections, CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., or Corizon Health, Inc. and continues to be employed by the Pennsylvania Department of Corrections at SCI Muncy, CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., or Corizon Health, Inc.

28. At all times relevant hereto, Captain Shawn Waltman was employed by the Pennsylvania Department of Corrections, SCI Muncy, as its Chief Investigative Officer.

29. At all times relevant hereto, Trooper James Wool was a member of the Pennsylvania State Police and was specifically stationed at PSP Montoursville, Lycoming County, Pennsylvania.

30. At all times relevant hereto, Wendy Nicholas was employed by the Pennsylvania Department of Corrections, SCI Muncy as the Deputy Superintendent for Facilities Management and worked with Dr. Stone at SCI Muncy.

31. At all times relevant hereto, Michael Shirey was a Lieutenant at SCI Muncy.

32. At all times relevant hereto, Aaron Biichle was an Assistant District Attorney in Lycoming County, Pennsylvania.

33. At all times relevant hereto, Robert Smith was the Warden at SCI Muncy and the government official responsible for the day-to-day operations at SCI Muncy.

34. At all times relevant hereto, John Wetzel was the Superintendent of the Pennsylvania Department of Corrections and was fully responsible for all matters related to the Pennsylvania Department of Corrections.

35. At all times relevant hereto, Tyree Blocker was the Commissioner of the Pennsylvania State Police and responsible for all matters relating to the Pennsylvania State Police.

36. At all times relevant hereto, Chelsey Camp was an inmate at SCI Muncy.

37. At all times relevant hereto, Cheryl Baskerville was an inmate at SCI Muncy.

38. During his employment as the Chief Medical Officer at SCI Muncy, Dr. Stone provided medical care to many SCI Muncy inmates.

39. At the outset of his full-time employment with SCI Muncy, Dr. Stone questioned many of the decisions of Leslie Blair-Morrison, a non-physician, who was his supervisor at said Institution.

40. In addition, Dr. Stone questioned many of the security practices at SCI Muncy as it related to the medical care administered to the inmate population at SCI Muncy.

41. Given that he was new to the position as Chief Medical Officer at SCI Muncy, and questioned the existing practices, Dr. Stone immediately alienated certain members of the SCI Muncy staff and Leslie Blair-Morrison.

42. Dr. Stone's questions about security practices are also believed to have alienated Defendant Wendy Nicholas, who was the Deputy Superintendent of Facilities Management and in charge of security.

43. In addition, Dr. Stone provided exemplary care to the inmate population, which was not always well received by personnel at SCI Muncy and/or Defendant Leslie Blair-Morrison.

44. During his term of employment at SCI Muncy, Dr. Stone treated Inmate CC, who was scheduled for and did have a one (1) day surgical procedure for her shoulder.

45. Upon returning from the medical procedure, Dr. Stone provided medical care for said inmate while said inmate was in the SCI Muncy infirmary.

46. Cheryl Baskerville, an inmate who was living in the same infirmary room as CC, notified Prison personnel that Dr. Stone had sexually assaulted Inmate CC.

47. Specifically, Baskerville and/or Inmate CC reported to prison personnel that Dr. Stone had, without Inmate CC's consent and knowledge, touched her breasts and touched around her vaginal area.

48. The primary reporter of this alleged assault was Cheryl Baskerville, a Felon, with a criminal record of fifteen (15) Retail Theft convictions and a False Report to law enforcement conviction.

49. It is Dr. Stone's belief and averment that the report of an alleged sexual assault about him was made on or shortly after May 29, 2015.

50. Inmate CC reportedly had no recollection of the event, as she claimed to be under the influence of the anesthesia that was used in the surgical procedure at the hospital in her medical procedure on or about May 29, 2015.

51. Purportedly, both Inmate CC and Inmate Cheryl Baskerville were given Prison Rape Elimination (PREA) forms to complete.

52. PREA is a policy, adopted by the Pennsylvania Department of Corrections, of protocol and decision-making procedures within the prison which are to be enacted upon receipt of a sexual assault accusation within the institution.

53. Upon information and belief, the completed PREA forms were provided to Defendant Shawn Waltman, the Chief Investigative Officer at SCI Muncy and the PREA Officer, William Frantz.

54. Defendant Waltman allegedly commenced with an investigation and an interview of Inmate CC and Inmate Baskerville.

55. It is Dr. Stone's belief and averment that Defendant Leslie Blair-Morrison, his supervisor, and Defendant Wendy Nicholas were immediately notified of the PREA allegation against him.

56. It is Dr. Stone's belief and averment that Defendant Leslie Blair-Morrison and/or Defendant Wendy Nicholas notified CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. of the pending PREA investigation alleged against Dr. Stone.

57. It is Dr. Stone's belief and averment that all CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. employees are required to follow and adhere to the Pennsylvania Department of Corrections' policies, rules and regulations.

58. On June 3, 2015, Dr. Stone was acting in his capacity as the Chief Medical Officer when he was visited in his office by Defendant Leslie Blair-Morrison.

59. Defendant Blair-Morrison was told she was to escort Dr. Stone to the Security Office.

60. Defendant Blair-Morrison knew about the specific PREA allegations against Dr. Stone and the concurrent police investigation, but never advised

the Doctor that he was being investigated for a PREA allegation nor that

there would be a concurrent police investigation.

61. Pursuant to the direction of Defendant Waltman, Defendant Leslie Blair-

Morrison escorted Dr. Stone to the Security Office which was located in the

Administrative Building approximately ten (10) minutes away from the

Prison Infirmary.

62. As she escorted Dr. Stone to the Security Office, Defendant Blair-Morrison

remarked that it was "never a good thing to be taken to the Security Office".

63. Upon reaching the Security Office, the Defendant Blair-Morrison smugly

remarked to Dr. Stone, "Have a good day".

64. Dr. Stone, thereafter, was left in the custody of the Defendant Waltman.

65. Without advising Dr. Stone of the same, Defendant Waltman made contact

with Defendant Wool, a Pennsylvania State Police Officer at the

Pennsylvania State Police Barracks at Montoursville, Lycoming County,

Pennsylvania.

66. Upon receiving the PREA allegation from Defendant Waltman, which

amounted to an investigation of a sexual assault, Defendant Wool left the

Montoursville Barracks and headed for SCI Muncy.

67. Dr. Stone was escorted into an unoccupied interview/interrogation room by

Defendant Waltman at approximately noon on June 3, 2015.

68. Defendant Waltman left Dr. Stone unoccupied in the interview/interrogation room for a period of time, but left Inmate CC's identification badge in the room for him to view (apparently as an investigative technique).

69. After a period of time, Defendant Waltman entered the interview/interrogation room to speak with Dr. Stone.

70. While Dr. Stone was seated in the interview/interrogation room, he was not permitted to have his cell phone, use the Institution phone, or have any contact with members of CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc., employees of SCI Muncy, or the general public.

71. The interview/interrogation room can best be described as a room which contained only a table and chairs.

72. Defendant Waltman finally advised Dr. Stone of the PREA allegation by Inmate CC, as described by Inmate Baskerville.

73. Dr. Stone advised that he did not sexually assault Inmate CC nor had he done anything inappropriate to Inmate CC.

74. Dr. Stone wrote a three (3) page statement detailing his interaction with Inmate CC and memorialized his denial of any sexual assault of Inmate CC or anything inappropriate with Inmate CC.

75. Subsequent thereto, between 12:30 PM and 1:00 PM, Defendant Wool arrived at SCI Muncy.

76. Defendant Wool was met in the SCI Muncy parking lot by Defendant Waltman who advised him of the specific nature of the accusations against Dr. Stone.

77. While Defendant Waltman and Defendant Wool were meeting in the SCI Muncy parking lot, Dr. Stone remained in the interview/interrogation room by himself and without contact with anyone at the prison or with the outside world.

78. From noon, when Dr. Stone was escorted by Defendant Blair-Morrison to the Security Office, until 1:15 PM, Dr. Stone was not permitted to leave the SCI Muncy interview/interrogation room.

79. At no time prior to, or during his interview with Dr. Stone, did Defendant Waltman read him the required Miranda warnings, despite the fact that Dr. Stone was in custody.

80. At 1:15 PM, according to the report and testimony of Defendant Wool, he commenced to interview Dr. Stone concerning the PREA allegation (of sexual assault).

81. Despite PREA policy's requirement of personnel training in Miranda warnings, Defendant Waltman claims he was not trained in the administration of these warnings.

82. At no time prior to the subject interview nor during the interview, did Defendant Wool advise Dr. Stone of his Fifth Amendment rights against self-incrimination and the required Miranda warnings.

83. At the outset of Defendant Wool's interview with Dr. Stone, Dr. Stone confirmed with Defendant Waltman that he had not been free to leave and was not free to leave until permitted to do so by Defendant Waltman.

84. During the interview with Defendant Wool, Dr. Stone denied a sexual assault or any inappropriate touching.

85. From approximately 1:15 PM until 2:20 PM, despite the absence of Miranda warnings, Dr. Stone was questioned vigorously.

86. During the above-referenced interview/interrogation period, Dr. Stone admitted that he had a notebook which he and Inmate CC passed back and forth, all of which was part of his holistic practice of medicine.

87. Defendant Wool, after consulting with Defendant Assistant District Attorney Aaron Biichle, who was at all times aware of the Doctor's illegal detention, requested that Dr. Stone give consent to search his truck for the notebook.

88. Defendant Biichle, knowing all the facts and circumstances, authorized Defendant Wool's actions in searching Dr. Stone's truck.

89. At approximately 2:20 PM, Dr. Stone executed a Consent to Search form.

90. Defendant Wool then went to the SCI Muncy parking lot and searched Dr. Stone's truck, uncovering a notebook, which Defendant Wool described as being consistent with a notebook paper referenced by Inmate CC in her PREA interview.

91. Defendant Wool seized the notebook and returned to question/interrogate Dr. Stone.

92. During the time that Defendant Wool was searching Dr. Stone's vehicle, Dr. Stone, while in custody, is alleged to have requested to speak with Defendant Waltman and to amend his PREA statement.

93. It is during this period that Defendant Waltman testified in Lycoming County Court that Dr. Stone signed the fourth page of his PREA statement at 2:50 PM.

94. During the time period in which Defendant Wool was searching Dr. Stone's vehicle, Dr. Stone requested to use the bathroom.

95. Because Dr. Stone was in custody, Defendant Waltman did not permit him to use the bathroom without an escort.  Said escort was Defendant Michael Shirey.

96. After using the bathroom, Dr. Stone was escorted back to the interview/interrogation room by Defendant Michael Shirey for additional questioning/interrogation.

97. After the search and the purported amendment to his PREA written statement, Defendant Wool continued to question Dr. Stone.

98. During the above-referenced time period, neither Defendant Wool nor Defendant Waltman mirandized Dr. Stone.

99. During the second phase of the interview/interrogation, from approximately 2:50 PM until 4:00 PM, Defendant Wool questioned Dr. Stone, despite the fact that he requested a lawyer on several occasions.

100. During the second phase of the interview/interrogation, Dr. Stone made oral statements to Defendants Wool and Waltman.

101. Between 4:00 PM and 4:15 PM on June 3, 2015, Dr. Stone was escorted out of SCI Muncy by Defendant Waltman, who took his keys and prison identification badge.

102. Dr. Stone, as stated above, received a notice of discharge from his employers, CCS, Corporate Creations Network Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. on or about June 3, 2015.

103. After several months, in conjunction with the Lycoming County District Attorney's office, Defendant Wool filed criminal charges against Dr. Stone,

to Case Number 1762-2015, which are attached hereto and incorporated

herein as **Exhibit "A"**.

104. The case was sent to Court by Lycoming County Magisterial Judge Jon

Kemp.

105. Dr. Stone filed a Suppression Motion, which was granted in part by the

Court, suppressing the use of evidence and statements after Defendant

Wool's interview.  A copy of the Court's suppression decision is attached

hereto and incorporated herein as **Exhibit "B"**.

106. The subject suppression decision is on appeal before the Pennsylvania

Superior Court, to Case Number 1657 MDA 2016.

107. At all times relevant hereto, the Pennsylvania Department of Corrections

adopted and has been subject to the Prison Rape Elimination Act of 2003

(PREA).

108. Pursuant to the Prison Rape Elimination Act of 2003 (PREA),

investigators of PREA allegations are to receive specialized training which

includes, among other items, the administration of Miranda warnings.

109. Defendant Waltman admittedly never received the specialized training in

the administration of Miranda warnings and, as such, never administered

Miranda warnings to Dr. Stone, despite the fact that Dr. Stone was, at times

relevant hereto, in custodial detention.

110. At all times relevant hereto, Defendant Waltman and Defendant William Frantz, the PREA Officer, did not immediately secure videotape from the May 29, 2015 date concerning Inmate CC, Inmate Cheryl Baskerville, nor any video footage in the vicinity of their room, which upon information and belief was readily available.

111. At all times relevant hereto, Defendant Waltman and Defendant William Frantz, never reviewed Inmate CC's medical records, to see if she was unconscious at any time upon her release from Geisinger to the infirmary at SCI Muncy.

112. In addition, in violation of PREA policy, Inmate CC was never taken for a sexual assault examination.

113. At all times relevant hereto, the PREA investigation, which formed the basis for the aforementioned criminal charges against Dr. Stone, was defective and incomplete.

114. Subsequent to Inmate CC's allegation of sexual assault by the Plaintiff, Inmate Baskerville asked to speak with Defendant Blair-Morrison.

115. Defendant Blair-Morrison was not the PREA Officer and has no investigative authority for PREA accusations nor any authority to interview witnesses or the accused in any PREA allegation.

116. As a result of the interview, Defendant Blair-Morrison authored a supplemental report concerning the PREA accusation against Dr. Stone.

117. Thereafter, weeks later, another inmate, RU, made a PREA accusation against Dr. Stone.

118. The allegations were that Dr. Stone had sexual intercourse with Inmate RU on at least three (3) occasions on three (3) separate dates within the confines of the SCI Muncy infirmary.

119. The allegations were once again investigated by Defendant Waltman and the PREA Officer, Defendant William Frantz.

120. The specific PREA information was also referred again to Defendant Wool, who commenced with the criminal investigation.

121. The initial interview/interrogation, conducted by Defendant Wool with Inmate RU, showed a number of inconsistencies in Inmate RU's statement.

122. The subject PREA information and criminal investigation was referred to Trooper Havens, who commenced with an investigation and interviews with Inmate RU and other witnesses.

123. Dr. Stone was interviewed by Havens and denied the accusations.

124. Defendant Waltman and the Defendant William Frantz, as had occurred in the Inmate CC investigation, failed to secure any relevant surveillance footage.

125. Inmate RU was never taken to a medical facility for testing, as is required by PREA policy.

126. After consulting with the Lycoming County District Attorney, Havens filed a criminal complaint against Dr. Stone which is attached hereto and incorporated herein as **Exhibit "C"**.

127. At the time of the Preliminary Hearing, the charges against Dr. Stone, with agreement of the Commonwealth, were dismissed.

128. As a result of the PREA accusations and the filing of the criminal complaints against Dr. Stone, his medical license, DEA license, and all credentialing has been suspended.

129. Dr. Stone's license and credentialing await the outcome of all criminal charges against him.

130. As a result of the actions of the Defendants herein and the criminal charges against him, Dr. Stone has not been employed as a physician since August of 2015.

131. Dr. Stone's medical license was suspended by the Pennsylvania Medical Board on August 31, 2015.

132. As a result of the Defendants' actions, individually, or in concert, Dr. Stone suffered harm in the form of pecuniary loss in an approximate amount of $540,000.00 with losses continuing to date; pain and suffering; emotional

harm, psychiatric harm, psychological harm, the expense of Attorney's fees

to defend, litigation costs and reputational harm in violation of Article One,

Section One of the Pennsylvania Constitution.

## COUNT I

## 42 USC §1983

## FOURTH AMENDMENT SEIZURE WITHOUT PROBABLE CAUSE

## VS

## DEFENDANT WOOL, DEFENDANT WALTMAN, DEFENDANT LESLIE

## BLAIR-MORRISON, DEFENDANT WENDY NICHOLAS, AND

## DEFENDANT SHIREY

133. Paragraphs one (1) through one hundred and thirty-two (132) are

incorporated herein as if set forth at length.

134. The above-named Defendants were state actors at all times relevant hereto.

135. Defendant Wool and Defendant Waltman detained and therefore seized

Dr. Stone for four (4) to four and one-half (4 ½) hours without probable

cause or legal justification for an illegal search.

136. The Defendants' detention and seizure is exemplified and established by

the fact that Dr. Stone was not permitted to even use the SCI Muncy

bathroom facilities without a correctional officer, namely, Defendant

Michael Shirey, waiting for him outside the bathroom so as to escort him back to the interview/interrogation room.

137. Defendant Nicholas and Defendant Blair-Morrison aided in Dr. Stone's detention and seizure on June 3, 2015, knowing that he would be seized without probable cause.

138. The Defendants' actions of detaining Dr. Stone without probable cause violated Dr. Stone's rights under the Fourth Amendment of the United States Constitution and Article One, Section Eight of the Pennsylvania Constitution.

139. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

   (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

   (b) Lost employee benefits through his employers;

   (c) Pain and suffering;

   (d) Severe emotional harm;

   (e) Psychiatric and psychological harm;

   (f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

   (g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the

Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.

## COUNT II

## 42 USC §1983

## FOURTH AMENDMENT ILLEGAL SEARCH

## VS

## DEFENDANT WOOL, DEFENDANT WALTMAN, DEFENDANT SHIREY,

## AND DEFENDANT BIICHLE

140. Paragraphs one (1) through one hundred and thirty-nine (139) are

incorporated herein as if set forth at length.

141. The Defendants were at all times relevant hereto state actors.

142. Defendants Wool, Waltman, Shirey, and Biichle illegally searched or

aided in the illegal search of Dr. Stone's truck, which resulted in the

inspection of and seizure of a notebook containing certain writings between

he and Inmate Camp.

143. Defendant Wool, on the relevant date, requested a directive from Defendant Assistant District Attorney Aaron Biichle, who approved and authorized his conduct on said date concerning the search and seizure of Dr. Stone's notebook.

144. The search of Dr. Stone's vehicle was without probable cause, was obtained without a search warrant, without voluntary consent, and while Dr. Stone was detained/seized without probable cause.

145. The search of Dr. Stone's vehicle was deemed Unconstitutional under the Fourth Amendment of the United States Constitution in a Court of Common Pleas' decision. See Exhibit "B".

146. The search of Dr. Stone's vehicle was Unconstitutional under the Fourth Amendment of the United States Constitution and Article One, Section Eight of the Pennsylvania Constitution.

147. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

    (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

    (b) Lost employee benefits through his employers;

    (c) Pain and suffering;

    (d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT III

## 42 USC §1983

## FIFTH AMENDMENT VIOLATION

## vs

## DEFENDANT WOOL AND DEFENDANT WALTMAN

148. Paragraphs one (1) through one hundred and forty-seven (147) are incorporated herein as if set forth at length.

149. The Defendants were at all times relevant hereto state actors.

150. The Defendants were required to, but failed and refused to, administer the required Miranda warnings to Dr. Stone while he was in custody for a four and one-half (4 ½) hour duration.

151. Dr. Stone allegedly made certain incriminating statements to one or both Defendants during his four and one-half (4 ½) hour detention without being afforded his Miranda warnings.

152. The Court of Common Pleas of Lycoming County has determined that Dr. Stone's rights under the Fifth Amendment, Self-Incrimination, were violated, See Exhibit "B".

153. Dr. Stone's statements to Defendant Waltman and Defendant Wool during the four and one-half (4 ½) hour seizure were coerced and not voluntarily made in violation of the Fifth Amendment of the United States Constitution.

154. Both Defendants, as set forth above, violated Dr. Stone's rights under the Fifth Amendment to the United States Constitution and Article One, Section Nine of the Pennsylvania Constitution.

155. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

   (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

   (b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

**COUNT IV**

**42 USC §1983**

**SIXTH AMENDMENT VIOLATION, RIGHT TO COUNSEL**

**VS**

**DEFENDANT WOOL AND DEFENDANT WALTMAN**

156. Paragraphs one (1) through one hundred and fifty-five (155) are incorporated herein as if set forth at length.

157. During the four and one-half (4 ½) hour interrogation, Dr. Stone, on multiple occasions, requested the right to speak with an attorney.

158. Dr. Stone, on several occasions, was denied the right to speak with an attorney and his interrogation continued for a lengthy period.

159. Both Defendants failed and refused to allow Dr. Stone to speak with legal Counsel, despite the fact that he invoked the right to Counsel three (3) times or more.

160. The Defendants violated the Dr. Stone's rights under the Sixth Amendment to the United States Constitution.

161. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

   (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

   (b) Lost employee benefits through his employers;

   (c) Pain and suffering;

   (d) Severe emotional harm;

   (e) Psychiatric and psychological harm;

   (f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

   (g) Reasonable Attorney's fees; and,

29

(h) Reputational harm under Article One, Section One of the

Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.

<u>**COUNT V**</u>

<u>**42 USC §1983**</u>

<u>**PROCEDURAL DUE PROCESS**</u>

<u>**VS**</u>

<u>**DEFENDANT ROBERT SMITH, DEFENDANT WILLIAM FRANTZ,**</u>

<u>**DEFENDANT WALTMAN, DEFENDANT JOHN WETZEL,**</u>

<u>**DEFENDANT CORRECT CARE SOLUTIONS, LLC (CCS), DEFENDANT**</u>

<u>**CORPORATE CREATIONS INCORPORATED (CORPORATE**</u>

<u>**CREATIONS INC), DEFENDANT WEXFORD HEALTH SOURCES,**</u>

<u>**INCORPORATED (WEXFORD HEALTH SOURCES, INC.), DEFENDANT**</u>

<u>**CORIZON HEALTH, INCORPORATED (CORIZON HEALTH, INC.),**</u>

<u>**DEFENDANT WENDY NICHOLAS, AND**</u>

<u>**DEFENDANT LESLIE BLAIR-MORRISON**</u>

162. Paragraphs one (1) through one hundred and sixty-one (161) are

incorporated herein as if set forth at length.

163. The Defendants were at all times relevant hereto state actors.

164. Dr. Stone was employed as Chief Medical Director by Correct Care

Solutions, LLC, (hereinafter "CCS"), Corporate Creations Incorporated

(hereinafter "Corporate Creations Inc."), Wexford Health Sources,

Incorporated (hereinafter "Wexford Health Sources, Inc."), and Corizon

Health, Incorporated (hereafter "Corizon Health, Inc.") at SCI Muncy.

165. CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon

Health, Inc. employees at SCI Muncy were required to adhere to the rules of

the Pennsylvania Department of Corrections to maintain their security

clearance at said Institution.

166. The Pennsylvania Department of Corrections adopted a policy and

procedure regarding prison rape or sexual assault allegations.

167. The Pennsylvania Department of Corrections adopted the Prison Rape

Elimination Act of 2003 (PREA), which was in effect at all times relevant

hereto.

168. The guidelines of PREA are clear as to what procedure needs to be

followed in the event of a sexual assault allegation.

169. On or about May 29, 2015, there was an allegation of sexual assault on

Inmate Chelsey Camp, as only reported by her roommate, Cheryl

Baskerville.

170. The Defendants failed and refused to follow PREA protocol by not having Inmate Camp taken for a sexual assault examination, by failing to immediately preserve relevant videotape, by failing to inspect Inmate CC's medical records, and in authorizing or permitting non-PREA personnel, Defendant Wendy Nicholas and/or Defendant Leslie Blair-Morrison to interview Cheryl Baskerville, the alleged eyewitness to the assault.

171. Defendants CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc., at all times relevant, were aware that Dr. Stone was not afforded his required Procedural Due Process as to PREA, yet never intervened to afford Dr. Stone the Due Process to which he was entitled and, in fact, terminated his employment.

172. As a result of the PREA investigation, or lack thereof, Dr. Stone lost his security clearance at SCI Muncy and his employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

173. As a result of the Fourteenth Amendment to the United States Constitution, Procedural Due Process violations, Dr. Stone lost his right to employment and his liberty, as he was seized on June 3, 2015 by a four and one-half (4 ½) hour detention, without probable cause.

174. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

**COUNT VI**

**42 USC §1983**

**SUBSTANTIVE DUE PROCESS**

**VS**

**DEFENDANT ROBERT SMITH, DEFENDANT WILLIAM FRANTZ, DEFENDANT WALTMAN, DEFENDANT JOHN WETZEL, DEFENDANT CORRECT CARE SOLUTIONS, LLC (CCS), DEFENDANT CORPORATE CREATIONS INCORPORATED (CORPORATE CREATIONS INC), DEFENDANT WEXFORD HEALTH SOURCES, INCORPORATED (WEXFORD HEALTH SOURCES, INC.), DEFENDANT CORIZON HEALTH, INCORPORATED (CORIZON HEALTH, INC.), DEFENDANT WENDY NICHOLAS, AND DEFENDANT LESLIE BLAIR-MORRISON**

175. Paragraphs one (1) through one hundred and seventy-four (174) are incorporated herein as if set forth at length.

176. The Defendants were at all times relevant hereto state actors.

177. Dr. Stone was employed as a physician by Correct Care Solutions, LLC, (hereinafter "CCS"), Corporate Creations Incorporated (hereinafter "Corporate Creations Inc."), Wexford Health Sources, Incorporated

(hereinafter "Wexford Health Sources, Inc."), and Corizon Health, Incorporated (hereafter "Corizon Health, Inc.") at SCI Muncy.

178. CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. employees at SCI Muncy were required to adhere to the rules of the Pennsylvania Department of Corrections in order to maintain their security clearance at said Institution.

179. The Pennsylvania Department of Corrections adopted a policy and procedure regarding prison rape or sexual assault allegations.

180. The Pennsylvania Department of Corrections adopted the Prison Rape Elimination Act of 2003 (PREA), which was in effect at all times relevant hereto.

181. The guidelines of PREA are clear as to what procedure needs to be followed in the event of a sexual assault allegation.

182. On or about May 29, 2015, there was an allegation of sexual assault on Inmate Chelsey Camp, as only reported by her roommate, Cheryl Baskerville.

183. The Defendants failed and refused to follow PREA protocol by not having Inmate Camp taken for a sexual assault examination, by failing to immediately preserve relevant videotape, by failing to inspect Camp's medical records, and in authorizing or permitting non-PREA personnel,

namely Defendant Wendy Nicholas and/or Defendant Leslie Blair-Morrison, to interview Cheryl Baskerville, the alleged eyewitness to the assault.

184. Defendants CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc., at all times relevant, were aware that Dr. Stone was not afforded his required rights under PREA, yet never intervened to afford Dr. Stone the Due Process to which he was entitled.

185. As a result of the PREA investigation, or lack thereof, Dr. Stone lost his security clearance at SCI Muncy and his employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

186. As a result of the Fourteenth Amendment to the United States Constitution, Substantive Due Process violation, Dr. Stone lost his right to employment and his liberty, as he was seized on June 3, 2015 by a four and one-half (4 ½) hour detention, without probable cause.

187. The actions by the above-named Defendants were arbitrary and egregious.

188. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

    (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

    (b) Lost employee benefits through his employers;

    (c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

<u>**COUNT VII**</u>

<u>**42 USC §1983**</u>

<u>**FOURTEENTH AMENDMENT**</u>

<u>**SUBSTANTIVE DUE PROCESS**</u>

<u>**VS**</u>

<u>**DEFENDANT WOOL, DEFENDANT WALTMAN,**</u>

<u>**DEFENDANT SHIREY AND**</u>

<u>**DEFENDANT AARON BIICHLE**</u>

189. Paragraphs one (1) through one hundred and eighty-eight (188) are incorporated herein as if set forth at length.

190. The Defendants were at all times relevant hereto state actors.

191. Defendants Wool, Waltman, Shirey, and Biichle illegally searched or aided in the search of Dr. Stone's truck, which resulted in the inspection of and seizure of a notebook containing certain writings between he and Inmate Camp.

192. Defendant Wool on the relevant date requested a directive from Defendant Assistant District Attorney Aaron Biichle, who approved and authorized his conduct on said date concerning the search and seizure of Dr. Stone's notebook.

193. The search of Dr. Stone's vehicle was without probable cause, was obtained without a search warrant, without voluntary consent, and while Dr. Stone was detained/seized without probable cause.

194. The search of Dr. Stone's vehicle was deemed Unconstitutional under the Fourth Amendment of the United States Constitution in a Court of Common Pleas. See Exhibit "B".

195. The search of Dr. Stone's vehicle was Unconstitutional under the Fourth Amendment of the United States Constitution and Article One, Section Eight

of the Pennsylvania Constitution, and the Due Process Clause of the

Fourteenth Amendment to the United States Constitution.

196. As a proximate result of the Defendants' actions set forth above, the

Plaintiff has been damaged as follows:

    (a) Approximately $540.000 in lost salary from loss of employment

       which deprivation is continuing to date;

    (b) Lost employee benefits through his employers;

    (c) Pain and suffering;

    (d) Severe emotional harm;

    (e) Psychiatric and psychological harm;

    (f) Punitive damages, as the Defendants' conduct was reckless and

       recklessly indifferent to Dr. Stone's rights; and,

    (g) Reasonable Attorney's fees; and,

    (h) Reputational harm under Article One, Section One of the

       Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.

## COUNT VIII

## 42 USC §1983

## CIVIL CONSPIRACY TO DEPRIVE PLAINTIFF OF CONSITUTIONAL

## RIGHTS, PRIVILEDGES, AND IMMUNITIES

## VS

## DEFENDANT ROBERT SMITH, DEFENDANT WENDY NICHOLAS,

## DEFENDANT LESLIE BLAIR-MORRISON, DEFENDANT WOOL,

## DEFENDANT WALTMAN, DEFENDANT WILLIAM FRANTZ,

## DEFENDANT JOHN WETZEL,

## DEFENDANT CHERYL BASKERVILLE, AND

## DEFENDANT CHELSEY CAMP

197. Paragraphs one (1) through one hundred and ninety-six (196) are
incorporated herein as if set forth at length.

198. All of the above-named Defendants conspired to violate Dr. Stone's rights
under the Fourth Amendment, Fifth Amendment, Sixth Amendment, and
Fourteenth Amendment of the United States Constitution in an effort to
terminate his security clearance at SCI Muncy and therefore cause a loss of
his employment at CCS, Corporate Creations Inc., Wexford Health Sources,
Inc., and Corizon Health, Inc.

199. Defendant Leslie Blair-Morrison, in furtherance of having Dr. Stone falsely arrested, illegally searched, and having his employment terminated at SCI Muncy, assisted in the illegal detention of Dr. Stone by commencing with his illegal detention and by engaging in an investigative capacity under PREA, having spoken to Inmate CC, although Blair-Morrison had no training or skill in investigation, nor was she authorized to conduct any part of a PREA investigation.

200. Defendant Wendy Nicholas, who oversees security at SCI Muncy, in furtherance of having Dr. Stone falsely arrested, illegally searched, and having his employment terminated at SCI Muncy, assisted in his illegal detention, engaged in an investigative capacity under PREA, although not trained to do so, and was aware and authorized the deprivation of Dr. Stone's rights under the Fourth Amendment, Fifth Amendment, Sixth Amendment, Fourteenth Amendment and the Privileges and Immunities Clause of the United States Constitution.

201. Defendant Robert Smith, in furtherance of having Dr. Stone falsely arrested, illegally searched and losing his employment at SCI Muncy, failed to properly supervise and train security and PREA personnel at SCI Muncy, specifically allowing Defendant Waltman to conduct PREA investigations without proper training, namely, the knowledge and administration of

Miranda warnings, knowledge of investigative procedures, strict adherence

to all requirements of PREA, including, but not limited to securing all

available videotape footage in any way pertaining to the alleged allegations

of Inmate CC and Cheryl Baskerville, securing the necessary releases of

medical information from Inmate CC so as to determine the validity of her

claims that she was unconscious at the time of the alleged incident, and

prohibiting non-PREA personnel, Defendant Blair-Morrison, to influence

and interview witnesses.

202. Furthermore, Defendant Smith, in furtherance of the aforementioned

conspiracy, failed to properly train and supervise the PREA officer,

Defendant William Frantz, so as to thoroughly follow the policy and dictates

of PREA, namely, securing all available evidence, properly interviewing

witnesses, securing Inmate CC's medical records, and being trained in the

administration of all PREA policies, including the administration of Miranda

warnings.

203. Defendant John Wetzel, in furtherance of the above-referenced conspiracy

at SCI Muncy, failed to ensure that Defendant Waltman and Defendant

Frantz were properly trained in PREA investigative techniques/procedures,

namely Defendant Waltman and Defendant Frantz falsely arrested Dr. Stone,

failed to provide him with Miranda warnings, allowed witnesses to be

influenced, and failed to secure all available evidence as required under PREA protocol and policies.

204. Defendant William Frantz, in furtherance of the above-referenced conspiracy assisted in Dr. Stone's illegal arrest and illegal search by failing to intervene in the PREA investigation to take appropriate steps to secure all available evidence, interview witnesses without interference, and to follow all protocol of PREA, including the administration of Miranda warnings.

205. Defendants Cheryl Baskerville and Chelsea Camp, in furtherance of the above-referenced conspiracy, made completely and utterly false allegations against Dr. Stone that he had sexually assaulted Defendant Camp.

206. The above-named Defendants disliked Dr. Stone's methods, (holistic medicine), his attention to detail, and his attitude of treating the inmates as "human beings" and one or more conspired to violate his rights as set forth above.

207. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and

   recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the

   Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.

## COUNT IX

## FALSE ARREST AND IMPRISONMENT (STATE PENDENT CLAIM)

## VS

## DEFENDANT WOOL, DEFENDANT WALTMAN, DEFENDANT

## NICHOLAS, DEFENDANT BLAIR-MORRISON,

## AND DEFENDANT WETZEL

208. Paragraphs one (1) through two hundred and seven (207) are incorporated

   herein as if set forth at length.

209. The Defendants, with intent, full knowledge and with conscious disregard did confine Dr. Stone to an interview/interrogation room on the bottom floor of the Administrative Building at SCI Muncy for four and one-half (4 ½) hours without Dr. Stone's consent and against his will.

210. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT X

## CIVIL ASSAULT (PENDENT STATE CLAIM)

## VS

## DEFENDANT WOOL AND DEFENDANT WALTMAN

211. Paragraphs one (1) through two hundred and ten (210) are incorporated herein as if set forth at length.

212. Defendants Wool and Waltman, by detaining Dr. Stone in a confined setting, monitoring his every move, exerting authority by virtue of their position as Police Officer and Security Captain, and allowing Dr. Stone to call no one and speak only to them, caused an immediate apprehension of bodily harm.

213. As a proximate result of the Defendants' actions set forth above, Dr. Stone has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

**COUNT XI**

**WRONGFUL TERMINATION (PENDENT STATE CLAIM)**

**VS**

**DEFENDANT CORRECT CARE SOLUTIONS, LLC (CCS), DEFENDANT CORPORATE CREATIONS INCORPORATED (CORPORATE CREATIONS INC), DEFENDANT WEXFORD HEALTH SOURCES, INCORPORATED (WEXFORD HEALTH SOURCES, INC.), AND DEFENDANT CORIZON HEALTH, INCORPORATED (CORIZON HEALTH, INC.)**

214. Paragraphs one (1) through two hundred and thirteen (213) are incorporated herein as if set forth at length.

215. Dr. Stone, at all times relevant hereto, was employed by CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. as a Chief Medical Officer at SCI Muncy.

216. Dr. Stone executed a contract for employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc., which he cannot locate, but upon information and belief, required due process prior to termination of employment.

217. The Defendants breached the contract with Dr. Stone by terminating him from employment without just cause due process, as Dr. Stone was fired for losing his security clearance when the Defendants, knowing that Dr. Stone was not afforded a full and fair PREA investigation by SCI Muncy, terminated his employment without further investigation.

218. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

   (a) Approximately $540,000.00 in lost salary from loss of employment which deprivation is continuing to date; and,

   (b) Incidental and consequential damages as a result of the breach.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

**COUNT XII**

**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**

**(PENDENT STATE CLAIM)**

**VS**

**DEFENDANT LESLIE BLAIR-MORRISON**

219. Paragraphs one (1) through two hundred and eighteen (218) are incorporated herein as if set forth at length.

220. Defendant Blair-Morrison knew Dr. Stone was a contract employee with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

221. The Defendant interfered with Dr. Stone's business relationship with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. by aiding in his seizure and false imprisonment, knowing that Dr. Stone would lose his security clearance and his employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

222. The Defendant was aware of the reason Dr. Stone was to be detained, whereas she escorted him to the interview room knowing that he would be subjected to a lengthy interrogation/police investigation, amounting to a seizure and, ultimately, resulting in a loss of his security clearance at SCI Muncy.

223. In addition, the Defendant tortiously interfered with Dr. Stone's employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. by interfering in the PREA investigation process by interviewing and coaching Cheryl Baskerville, the sole witness of Dr. Stone's alleged sexual assault, in clear contravention of both PREA protocol and CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

224. As a proximate result of the Defendant's actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendant's conduct was reckless and

    recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the

    Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.

## COUNT XIII

## DEBORAH L. STONE

## VS

## DEFENDANTS

## LOSS OF CONSORTIUM

225. Paragraphs one (1) through two hundred and twenty-four (224) are

    incorporated herein as if set forth at length.

226. At the time of the incident complained of in Dr. Stone's Complaint, the

    Plaintiffs were married and that the Plaintiffs continue to be married.

227. That as a result of the wrongful acts of the Defendants, Dr. Stone was

    caused to suffer, and will continue to suffer in the future, loss of consortium,

loss of society, affection, assistance, and conjugal fellowship, all to the

detriment of their marital relationship.

228. That all the aforesaid injuries and damages were caused solely and

proximately by the negligence of the Defendants herein.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the

Jurisdictional limit plus delay damages, interest, and costs.


## COUNT XIV

## 42 USC §1983

## EQUAL PROTECTION CLAUSE

## VS

## DEFENDANT WETZEL, DEFENDANT SMITH,

## DEFENDANT LESLIE BLAIR-MORRISON,

## DEFENDANT WENDY NICHOLAS, DEFENDANT WILLIAM FRANTZ,

## AND DEFENDANT WALTMAN


229. Paragraphs one (1) through two hundred and twenty-eight (228) are

incorporated herein as if set forth at length.

230. The Defendants were at all times relevant hereto state actors.

231. Inmate CC and alleged eyewitness, Inmate Cheryl Baskerville made a PREA Complaint against Dr. Stone.

232. As stated above, the PREA process as it related to Dr. Stone was defective, deficient, and not in accordance with the PREA policy/guidelines.

233. Despite the flawed PREA investigation of Dr. Stone, he lost his security clearance at SCI Muncy and his employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

234. In addition, despite a fatally flawed PREA process, Dr. Stone was charged with crimes.  See Exhibit "A".

235. Dr. Stone was not treated equally as other SCI Muncy employees accused of sexual assault, as other accused employees, who often times have admitted wrongdoing, have not been disciplined or prosecuted criminally.

236. The Defendants violated the Equal Protection Clause of the United States Constitution.

237. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT XV

## CONSPIRACY TO WRONGFULLY TERMINATE EMPLOYMENT

## (PENDENT STATE CLAIM)

## VS

## DEFENDANT LESLIE BLAIR-MORRISON, DEFENDANT WENDY

## NICHOLAS, DEFENDANT CHELSEY CAMP,

## AND DEFENDANT CHERYL BASKERVILLE

238. Paragraphs one (1) through two hundred and thirty-seven (237) are incorporated herein as if set forth at length.

239. Defendant Camp and/or Defendant Baskerville made false and scandalous PREA reports about Dr. Stone so as to terminate his employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. at SCI Muncy.

240. Defendant Blair-Morrison and Defendant Wendy Nicholas worked closely with Dr. Stone on a daily basis.

241. Defendant Blair-Morrison and Defendant Wendy Nicholas were aware of the false and scandalous accusations by Defendant Camp and/or Defendant Baskerville about Dr. Stone having sexually assaulted Defendant Camp, however, both, in an effort to get Dr. Stone fired from his position as Chief Medial Director at SCI Muncy, confirmed with prison officials and/or officials of CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and/or Corizon Health, Inc. that the alleged assault was likely to have occurred.

242. All Defendants conspired for one (1) unlawful purpose: to have Dr. Stone lose his employment at CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

243. As a result of the conspiracy, Dr. Stone lost his employment at CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc. and his medical license.

244. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Lost employee benefits through his employers; and,

(b) Punitive damages.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT XVI

## 42 USC §1983

## DEFENDANT WETZEL AND DEFENDANT SMITH

245. Paragraphs one (1) through two hundred and forty-four (244) are incorporated herein as if set forth at length.

246. Defendants Wetzel and Smith failed to ensure that PREA protocol/policies were properly followed at SCI Muncy, insofar as they failed to properly train Defendant Waltman and Defendant Frantz to administer the PREA policies, namely, both Defendant Waltman and Defendant Frantz were unaware of how to administer Miranda warnings, were unaware of how to question a contract employee such as Dr. Stone, were unaware of and not properly trained in securing all available evidence for the PREA investigation,

including witness statements, available and material videotape footage, and the alleged victim's medical records, were unaware of necessity to and not properly trained to immediate transportation of the alleged victim of the sexual assault to a medical facility for a sexual assault investigation.

247. Defendants Frantz and Waltman, who were responsible for investigation of PREA complaints at the time when Dr. Stone was discharged from employment at SCI Muncy, were improperly trained and supervised concerning all PREA rules, regulations and protocol.

248. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm under Article One, Section One of the

Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.

Respectfully submitted,

S:/ Gregory T. Moro, Esquire
Gregory T. Moro, Esquire
105 E. Market Street
Danville, PA 17821
(570) 784-1010
Attorney ID # 56089

S:/ Hope R. Moro, Esquire
Hope R. Moro, Esquire
105 E. Market Street
Danville, PA 17821
(570) 784-1010
Attorney ID # 61705