## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. STONE AND
DEBORAH L. STONE
                **Plaintiffs**

    **vs.**

SHAWN WALTMAN,
JAMES WOOL,
CORRECT CARE SOLUTIONS,
LLC, LESLIE BLAIR-MORRISON,
WENDY NICHOLAS, WILLIAM
FRANTZ, JOHN WETZEL,
MICHAEL SHIREY,
AARON BIICHLE,
ROBERT SMITH,
TYREE C. BLOCKER,
CHELSEY CAMP,
CHERYL BASKERVILLE
                **Defendants**

**CIVIL ACTION – LAW**

**HONORABLE JUDGE JONES, II**

**CASE: 4:17-CV-00864-JEJ**

## AMENDED CIVIL COMPLAINT

AND NOW come Donald J. Stone and Deborah L. Stone, by and through their Attorneys, Gregory T. Moro, Esquire and Hope R. Moro, Esquire and set forth an Amended Civil Complaint as follows:

1. The Plaintiffs are Donald J. Stone and Deborah L. Stone, adult individuals, husband and wife, currently residing at 545 Zaners Bridge Road, Stillwater, Columbia County, Pennsylvania 17878.

2. The Defendant is Shawn Waltman, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto the Chief Investigative Officer at The State Correctional Institution at Muncy (hereinafter "SCI Muncy).

3. The Defendant is James Wool, an adult individual with a business address of 899 Cherry Street, Montoursville, Pennsylvania 17754, who was at all times relevant hereto a Pennsylvania State Trooper.

4. The Defendant is Correct Care Solutions (hereinafter "CCS"), a limited liability corporation with a business address of 600 North 12th Street, Suite 1, Lemoyne, Pennsylvania 17043, which was at all times relevant hereto Dr. Stone's employer.

5. The Defendant is Leslie Blair-Morrison, an adult individual, with business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, Dr. Stone's supervisor at CCS and the Correctional Health Care Administrator (hereinafter "CHCA") at SCI Muncy. Defendant Blair-Morrison, at all times relevant hereto, the

Defendant was employed by the Pennsylvania Department of Corrections, SCI Muncy and CCS.

6. The Defendant is Wendy Nicholas, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, the Deputy Superintendent for Facilities Management at SCI Muncy.

7. The Defendant is William Frantz, an adult individual, with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, the Prison Rape Elimination Act of 2003 (hereinafter "PREA") Officer at SCI Muncy.

8. The Defendant is Michael Shirey, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, a Correction's Officer at SCI Muncy.

9. The Defendant is Aaron Biichle, an adult individual with a business address of 48 West Third Street, Williamsport, Lycoming County, Pennsylvania 17701, who was at all times relevant hereto, an Assistant District Attorney of Lycoming County.

10. The Defendant is John Wetzel, an adult individual with a business address of 1920 Technology Parkway, Mechanicsburg, Pennsylvania 17050, who

was at all times relevant hereto, the Secretary for the Pennsylvania Department of Corrections.

11. The Defendant is Robert Smith, an adult individual with a business address of 6454 Route 405 Hwy, Muncy, Lycoming County, Pennsylvania 17756, who was at all times relevant hereto, the Superintendent of SCI Muncy.

12. The Defendant is Tyree C. Blocker, an adult individual with a business address of 1800 Elmerton Avenue, Harrisburg, Pennsylvania 17110, who was at all times relevant hereto, the Commissioner of the Pennsylvania State Police.

13. The Defendant is Chelsey Camp, an adult individual whose whereabouts are unknown, who was at all times relevant hereto, an Inmate at SCI Muncy.

14. The Defendant is Cheryl Baskerville, an adult individual whose whereabouts are unknown, who was at all times relevant hereto, an Inmate at SCI Muncy.

15. All of the above-referenced Defendants are being sued in their individual capacities under 42 U.S.C. §1983.

## **JURISDICTION**

16. This Court has jurisdiction over this matter pursuant to 42 U.S.C.A. §1331(a) and jurisdiction over the state claims pursuant to the Common Law Doctrine of Pendent Jurisdiction.

17. At all times relevant hereto, Dr. Donald Stone was a licensed physician in the Commonwealth of Pennsylvania.

18. At all times relevant hereto, the Dr. Stone was employed for the Pennsylvania Department of Corrections, at SCI Muncy, on a part time basis for a period of ten (10) years.

19. The Plaintiff, Donald Stone, executed an employment contract with CCS for employment as the Chief Medical Officer at SCI Muncy.

20. At all times relevant hereto, while participating in his duties as a physician at SCI Muncy, Dr. Stone received his salary and benefits in accordance with his contract with CCS until termination.

21. Dr. Stone was employed by CCS at SCI Muncy on a full-time basis as the Chief Medical Officer until June 3, 2015, at which time CCS terminated his employment.

22. During his term of full-time employment as the Chief Medical Officer with CCS at SCI Muncy, Dr. Stone oversaw all medical matters involving the SCI Muncy prison inmate population.

23. At all times relevant hereto, Leslie Blair-Morrison, who was not a licensed physician, was Dr. Stone's superior/supervisor at SCI Muncy.  Blair-Morrison held a position referred to as the CHCA, however, at times set

forth herein, said Defendant clearly acted outside the scope of her

employment responsibilities for SCI Muncy.

24. At all times relevant hereto, Leslie Blair-Morrison is believed to have been

    employed by the Pennsylvania Department of Corrections and continues to

    be employed by the Pennsylvania Department of Corrections at SCI Muncy.

25. At all times relevant hereto, Captain Shawn Waltman was employed by the

    Pennsylvania Department of Corrections, SCI Muncy, as its Chief

    Investigative Officer.

26. At all times relevant hereto, Trooper James Wool was a member of the

    Pennsylvania State Police and was specifically stationed at PSP

    Montoursville, Lycoming County, Pennsylvania.

27. At all times relevant hereto, Wendy Nicholas was employed by the

    Pennsylvania Department of Corrections, SCI Muncy as the Deputy

    Superintendent for Facilities Management and worked with Dr. Stone at SCI

    Muncy.

28. At all times relevant hereto, Michael Shirey was a Lieutenant at SCI

    Muncy.

29. At all times relevant hereto, Aaron Biichle was an Assistant District

    Attorney in Lycoming County, Pennsylvania.

30. At all times relevant hereto, Robert Smith was the Warden at SCI Muncy and the government official responsible for the day-to-day operations at SCI Muncy.

31. At all times relevant hereto, John Wetzel was the Superintendent of the Pennsylvania Department of Corrections and was fully responsible for all matters related to the Pennsylvania Department of Corrections.

32. At all times relevant hereto, Tyree Blocker was the Commissioner of the Pennsylvania State Police and responsible for all matters relating to the Pennsylvania State Police.

33. At all times relevant hereto, Chelsey Camp was an inmate at SCI Muncy.

34. At all times relevant hereto, Cheryl Baskerville was an inmate at SCI Muncy.

35. During his employment as the Chief Medical Officer at SCI Muncy, Dr. Stone provided medical care to many SCI Muncy inmates.

36. At the outset of his full-time employment with SCI Muncy, Dr. Stone questioned many of the decisions of Leslie Blair-Morrison, a non-physician, who was his supervisor at said Institution.

37. In addition, Dr. Stone questioned many of the security practices at SCI Muncy as it related to the medical care administered to the inmate population at SCI Muncy.

38. Given that he was new to the position as Chief Medical Officer at SCI
    Muncy, and questioned the existing practices, Dr. Stone immediately
    alienated certain members of the SCI Muncy staff and Leslie Blair-
    Morrison.

39. Dr. Stone's questions about security practices are also believed to have
    alienated Defendant Wendy Nicholas, who was the Deputy Superintendent
    of Facilities Management and in charge of security.

40. In addition, Dr. Stone provided exemplary care to the inmate population,
    which was not always well received by personnel at SCI Muncy and/or
    Defendant Leslie Blair-Morrison.

41. During his term of employment at SCI Muncy, Dr. Stone treated Inmate
    CC, who was scheduled for and did have a one (1) day surgical procedure
    for her shoulder.

42. Upon returning from the medical procedure, Dr. Stone provided medical
    care for said inmate while said inmate was in the SCI Muncy infirmary.

43. Cheryl Baskerville, an inmate who was living in the same infirmary room as
    CC, notified Prison personnel that Dr. Stone had sexually assaulted Inmate
    CC.

44. Specifically, Baskerville and/or Inmate CC reported to prison personnel that Dr. Stone had, without Inmate CC's consent and knowledge, touched her breasts and touched around her vaginal area.

45. The primary reporter of this alleged assault was Cheryl Baskerville, a Felon, with a criminal record of fifteen (15) Retail Theft convictions and a False Report to law enforcement conviction.

46. It is Dr. Stone's belief and averment that the report of an alleged sexual assault about him was made on or shortly after May 29, 2015.

47. Inmate CC reportedly had no recollection of the event, as she claimed to be under the influence of the anesthesia that was used in the surgical procedure at the hospital in her medical procedure on or about May 29, 2015.

48. Purportedly, both Inmate CC and Inmate Cheryl Baskerville were given Prison Rape Elimination (PREA) forms to complete.

49. PREA is a policy, adopted by the Pennsylvania Department of Corrections, of protocol and decision-making procedures within the prison which are to be enacted upon receipt of a sexual assault accusation within the institution.

50. Upon information and belief, the completed PREA forms were provided to Defendant Shawn Waltman, the Chief Investigative Officer at SCI Muncy and the PREA Officer, William Frantz.

51. Defendant Waltman allegedly commenced with an investigation and an interview of Inmate CC and Inmate Baskerville.

52. It is Dr. Stone's belief and averment that Defendant Leslie Blair-Morrison, his supervisor, and Defendant Wendy Nicholas were immediately notified of the PREA allegation against him.

53. It is Dr. Stone's belief and averment that Defendant Leslie Blair-Morrison and/or Defendant Wendy Nicholas notified CCS of the pending PREA investigation alleged against him.

54. It is Dr. Stone's belief and averment that all CCS employees are required to follow and adhere to the Pennsylvania Department of Corrections' policies, rules and regulations.

55. On June 3, 2015, Dr. Stone was acting in his capacity as the Chief Medical Officer when he was visited in his office by Defendant Leslie Blair-Morrison.

56. Defendant Blair-Morrison was told she was to escort Dr. Stone to the Security Office.

57. Defendant Blair-Morrison knew about the specific PREA allegations against Dr. Stone and the concurrent police investigation, but never advised the Doctor that he was being investigated for a PREA allegation nor that there would be a concurrent police investigation.

58. Pursuant to the direction of Defendant Waltman, Defendant Leslie Blair-Morrison escorted Dr. Stone to the Security Office which was located in the Administrative Building approximately ten (10) minutes away from the Prison Infirmary.

59. As she escorted Dr. Stone to the Security Office, Defendant Blair-Morrison remarked that it was "never a good thing to be taken to the Security Office".

60. Upon reaching the Security Office, the Defendant Blair-Morrison smugly remarked to Dr. Stone, "Have a good day".

61. Dr. Stone, thereafter, was left in the custody of the Defendant Waltman.

62. Without advising Dr. Stone of the same, Defendant Waltman made contact with Defendant Wool, a Pennsylvania State Police Officer at the Pennsylvania State Police Barracks at Montoursville, Lycoming County, Pennsylvania.

63. Upon receiving the PREA allegation from Defendant Waltman, which amounted to an investigation of a sexual assault, Defendant Wool left the Montoursville Barracks and headed for SCI Muncy.

64. Dr. Stone was escorted into an unoccupied interview/interrogation room by Defendant Waltman at approximately noon on June 3, 2015.

65. Defendant Waltman left Dr. Stone unoccupied in the interview/interrogation room for a period of time, but left Inmate CC's identification badge in the room for him to view (apparently as an investigative technique).

66. After a period of time, Defendant Waltman entered the interview/interrogation room to speak with Dr. Stone.

67. While Dr. Stone was seated in the interview/interrogation room, he was not permitted to have his cell phone, use the Institution phone, or have any contact with members of CCS, employees of SCI Muncy or the general public.

68. The interview/interrogation room can best be described as a room which contained only a table and chairs.

69. Defendant Waltman finally advised Dr. Stone of the PREA allegation by Inmate CC, as described by Inmate Baskerville.

70. Dr. Stone advised that he did not sexually assault Inmate CC nor had he done anything inappropriate to Inmate CC.

71. Dr. Stone wrote a three (3) page PREA statement detailing his interaction with Inmate CC and memorialized his denial of any sexual assault of Inmate CC or anything inappropriate with Inmate CC.

72. Subsequent thereto, between 12:30 PM and 1:00 PM, Defendant Wool arrived at SCI Muncy.

73. Defendant Wool was met in the SCI Muncy parking lot by Defendant Waltman who advised him of the specific nature of the accusations against Dr. Stone.

74. While Defendant Waltman and Defendant Wool were meeting in the SCI Muncy parking lot, Dr. Stone remained in the interview/interrogation room by himself and without contact with anyone at the prison or with the outside world.

75. From noon, when Dr. Stone was escorted by Defendant Blair-Morrison to the Security Office, until 1:15 PM, Dr. Stone was not permitted to leave the SCI Muncy interview/interrogation room.

76. At no time prior to, or during his interview with Dr. Stone, did Defendant Waltman read him the required Miranda warnings, despite the fact that Dr. Stone was in custody.

77. At 1:15 PM, according to the report and testimony of Defendant Wool, he commenced to interview Dr. Stone concerning the PREA allegation (of sexual assault).

78. Despite PREA policy's requirement of personnel training in Miranda warnings, Defendant Waltman claims he was not trained in the administration of these warnings.

79. At no time prior to the subject interview nor during the interview, did Defendant Wool advise Dr. Stone of his Fifth Amendment rights against self-incrimination and the required Miranda warnings.

80. At the outset of Defendant Wool's interview with Dr. Stone, Dr. Stone confirmed with Defendant Waltman that he had not been free to leave and was not free to leave until permitted to do so by Defendant Waltman.

81. During the interview with Defendant Wool, Dr. Stone denied a sexual assault or any inappropriate touching.

82. From approximately 1:15 PM until 2:20 PM, despite the absence of Miranda warnings, Dr. Stone was questioned vigorously.

83. During the above-referenced interview/interrogation period, Dr. Stone admitted that he had a notebook which he and Inmate CC passed back and forth, all of which was part of his holistic practice of medicine.

84. Thereafter, Defendant Wool placed a call to Assistant District Attorney Biichle to discuss the situation.

85. It is the Plaintiffs' belief that Defendant Wool apprised Defendant Biichle of all facts and circumstances of the custodial detention and that Defendant Biichle was aware there were clear Constitutional violations, in the nature of Fourth and Fifth Amendment violations, occurring, or which had occurred, relative to Dr. Stone's detention and questioning.

86. Defendant Biichle is believed to have advised Defendant Wool to proceed with a consent search, or in the alternative, if unsuccessful in obtaining consent, to detain Dr. Stone and pursue a search warrant.

87. Defendant Biichle, knowing all the facts and circumstances, which established clear Constitutional violations, authorized Defendant Wool's actions in searching Dr. Stone's truck.  Defendant Biichle's actions were objectively unreasonable under the circumstances.

88. At approximately 2:20 PM, Dr. Stone executed a Consent to Search form.

89. Defendant Wool then went to the SCI Muncy parking lot and searched Dr. Stone's truck, uncovering a notebook, which Defendant Wool described as being consistent with a notebook paper referenced by Inmate CC in her PREA interview.

90. Defendant Wool seized the notebook and returned to question/interrogate Dr. Stone.

91. During the time that Defendant Wool was searching Dr. Stone's vehicle, Dr. Stone, while in custody, is alleged to have requested to speak with Defendant Waltman and to amend his PREA statement.

92. It is during this period that Defendant Waltman testified in Lycoming County Court that Dr. Stone signed the fourth page of his PREA statement at 2:50 PM.

93. During the time period in which Defendant Wool was searching Dr. Stone's vehicle, Dr. Stone requested to use the bathroom.

94. Because Dr. Stone was in custody, Defendant Waltman did not permit him to use the bathroom without an escort.  Said escort was Defendant Michael Shirey.

95. After using the bathroom, Dr. Stone was escorted back to the interview/interrogation room by Defendant Michael Shirey for additional questioning/interrogation.

96. After the search and the purported amendment to his PREA written statement, Defendant Wool continued to question Dr. Stone.

97. During the above-referenced time period, neither Defendant Wool nor Defendant Waltman mirandized Dr. Stone.

98. During the second phase of the interview/interrogation, from approximately 2:50 PM until 4:00 PM, Defendant Wool questioned Dr. Stone, despite the fact that he requested a lawyer on several occasions.

99. During the second phase of the interview/interrogation, Dr. Stone made oral statements to Defendants Wool and Waltman.

100. Between 4:00 PM and 4:15 PM on June 3, 2015, Dr. Stone was escorted out of SCI Muncy by Defendant Waltman, who took his keys and prison identification badge.

101. Dr. Stone, as stated above, received a notice of discharge from his employer CCS, on or about June 3, 2015.

102. After several months, with the clear approval of the Lycoming County District Attorney's office, Defendant Wool filed criminal charges against Dr. Stone, to Case Number 1762-2015, which are attached hereto and incorporated herein as **Exhibit "A"**.

103. The case was sent to Court by Lycoming County Magisterial Judge Jon Kemp.

104. Dr. Stone filed a Suppression Motion, which was granted in part by the Court, suppressing the use of evidence and statements after Defendant Wool's interview.  A copy of the Court's suppression decision is attached hereto and incorporated herein as **Exhibit "B"**. Notably, the Commonwealth consented to suppress the consent search and statements given to Trooper Wool as Constitutional violations under the Fourth and Fifth Amendments of the United States Constitution.

105. The subject suppression decision is on appeal before the Pennsylvania Superior Court, to Case Number 1657 MDA 2016.

106. The Superior Court by decision dated May 31, 2017, affirmed the Trial Court's decision.

107. The Commonwealth filed an Application for Reargument.

108. At all times relevant hereto, the Pennsylvania Department of Corrections adopted and has been subject to the Prison Rape Elimination Act of 2003 (PREA).

109. Pursuant to the Prison Rape Elimination Act of 2003 (PREA), investigators of PREA allegations are to receive specialized training which includes, among other items, the administration of Miranda warnings.

110. Defendant Waltman admittedly never received the specialized training in the administration of Miranda warnings and, as such, never administered Miranda warnings to Dr. Stone, despite the fact that Dr. Stone was, at times relevant hereto, in custodial detention.

111. At all times relevant hereto, Defendant Waltman and Defendant William Frantz, the PREA Officer, did not immediately secure videotape from the May 29, 2015 date concerning Inmate CC, Inmate Cheryl Baskerville, nor any video footage in the vicinity of their room, which upon information and belief was readily available.

112. At all times relevant hereto, Defendant Waltman and Defendant William Frantz, never reviewed Inmate CC's medical records, to see if she was unconscious at any time upon her release from Geisinger to the infirmary at SCI Muncy.

113. In addition, in violation of PREA policy, Inmate CC was never taken for a sexual assault examination.

114. At all times relevant hereto, the PREA investigation, which formed the basis for the aforementioned criminal charges against Dr. Stone, was defective and incomplete.

115. Subsequent to Inmate CC's allegation of sexual assault by the Plaintiff, Inmate Baskerville asked to speak with Defendant Blair-Morrison.

116. Defendant Blair-Morrison was not the PREA Officer and has no investigative authority for PREA accusations nor any authority to interview witnesses or the accused in any PREA allegation.

117. As a result of the interview, Defendant Blair-Morrison authored a supplemental report concerning the PREA accusation against Dr. Stone.

118. Thereafter, weeks later, another inmate, RU, made a PREA accusation against Dr. Stone.

119. The allegations were that Dr. Stone had sexual intercourse with Inmate RU on at least three (3) occasions on three (3) separate dates within the confines of the SCI Muncy infirmary.

120. The allegations were once again investigated by Defendant Waltman and the PREA Officer, Defendant William Frantz.

121. The specific PREA information was also referred again to Defendant Wool, who commenced with the criminal investigation.

122. The initial interview/interrogation, conducted by Defendant Wool with Inmate RU, showed a number of inconsistencies in Inmate RU's statement.

123. The subject PREA information and criminal investigation was referred to Trooper Havens, who commenced with an investigation and interviews with Inmate RU and other witnesses.

124. Dr. Stone was interviewed by Havens and denied the accusations.

125. Defendant Waltman and the Defendant William Frantz, as had occurred in the Inmate CC investigation, failed to secure any relevant surveillance footage.

126. Inmate RU was never taken to a medical facility for testing, as is required by PREA policy.

127. After consulting with the Lycoming County District Attorney, Havens filed a criminal complaint against Dr. Stone which is attached hereto and incorporated herein as **Exhibit "C"**.

128. At the time of the Preliminary Hearing, the charges against Dr. Stone, with agreement of the Commonwealth, were dismissed.

129. As a result of the PREA accusations and the filing of the criminal complaints against Dr. Stone, his medical license, DEA license, and all credentialing has been suspended.

130. Dr. Stone's license and credentialing await the outcome of all criminal charges against him.

131. As a result of the actions of the Defendants herein and the criminal charges against him, Dr. Stone has not been employed as a physician since August of 2015.

132. Dr. Stone's medical license was suspended by the Pennsylvania Medical Board on August 31, 2015.

133. As a result of the Defendants' actions, individually, or in concert, Dr. Stone suffered harm in the form of pecuniary loss in an approximate amount of $540,000.00 with losses continuing to date; pain and suffering; emotional harm, psychiatric harm, psychological harm, the expense of Attorney's fees to defend, litigation costs and reputational harm.

## COUNT I

## 42 USC §1983

## FOURTH AMENDMENT SEIZURE WITHOUT PROBABLE CAUSE

## VS

## DEFENDANT WOOL, DEFENDANT WALTMAN, DEFENDANT LESLIE BLAIR-MORRISON, DEFENDANT WENDY NICHOLAS, AND DEFENDANT SHIREY

134. Paragraphs one (1) through one hundred and thirty-two (133) are incorporated herein as if set forth at length.

135. The above-named Defendants were state actors at all times relevant hereto.

136. Defendant Wool and Defendant Waltman detained and therefore seized Dr. Stone for four (4) to four and one-half (4 ½) hours without probable cause or legal justification for an illegal search.

137. The Defendants' detention and seizure is exemplified and established by the fact that Dr. Stone was not permitted to even use the SCI Muncy bathroom facilities without a correctional officer, namely, Defendant Michael Shirey, waiting for him outside the bathroom so as to escort him back to the interview/interrogation room.

138. Defendant Nicholas and Defendant Blair-Morrison aided in Dr. Stone's detention and seizure on June 3, 2015, knowing that he would be seized without probable cause.

139. The Defendants' actions of detaining Dr. Stone without probable cause violated Dr. Stone's rights under the Fourth Amendment of the United States Constitution and Article One, Section Eight of the Pennsylvania Constitution.

140. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

    (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

    (b) Lost employee benefits through his employers;

    (c) Pain and suffering;

    (d) Severe emotional harm;

    (e) Psychiatric and psychological harm;

    (f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

    (g) Reasonable Attorney's fees; and,

    (h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

**COUNT II**

**42 USC §1983**

**FOURTH AMENDMENT ILLEGAL SEARCH**

**VS**

**DEFENDANT WOOL, DEFENDANT WALTMAN, DEFENDANT SHIREY, AND DEFENDANT BIICHLE**

141. Paragraphs one (1) through one hundred and forty (140) are incorporated herein as if set forth at length.

142. The Defendants were at all times relevant hereto state actors.

143. Defendants Wool, Waltman, Shirey, and Biichle illegally searched or aided in the illegal search of Dr. Stone's truck, which resulted in the inspection of and seizure of a notebook allegedly containing certain writings between he and Inmate Camp.

144. Defendant Wool, on the relevant date, requested a directive from Defendant Assistant District Attorney Aaron Biichle, who was aware of the

Constitutional violations, but approved and authorized his conduct on said

date concerning the search of Dr. Stone's truck and seizure of notebook.

145. The search of Dr. Stone's vehicle was without probable cause, was

obtained without a search warrant, without voluntary consent, and while Dr.

Stone was detained/seized without probable cause.

146. The search of Dr. Stone's vehicle was deemed Unconstitutional under the

Fourth Amendment of the United States Constitution in a Court of Common

Pleas' decision. See Exhibit "B".  As noted, the Commonwealth stipulated

that the consent search of the truck and seizure of the notebook were

Constitutional violations.

147. The search of Dr. Stone's vehicle was Unconstitutional under the Fourth

Amendment of the United States Constitution and Article One, Section Eight

of the Pennsylvania Constitution.

148. As a proximate result of the Defendants' actions set forth above, the

Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment

which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT III

## 42 USC §1983

## FIFTH AMENDMENT VIOLATION

## SELF-INCRIMINATION

## vs

## DEFENDANT WOOL AND DEFENDANT WALTMAN

149. Paragraphs one (1) through one hundred and forty-eight (148) are incorporated herein as if set forth at length.

150. The Defendants were at all times relevant hereto state actors.

151. The Defendants, knowing that they were required to, failed and refused to administer the required Miranda warnings to Dr. Stone while he was in custody for a four and one-half (4 ½) hour duration.

152. Dr. Stone allegedly made certain incriminating statements to one or both Defendants during his four and one-half (4 ½) hour detention without being afforded his Miranda warnings in violation of his rights under the Fifth Amendment, Self-Incrimination, of the United States Constitution.

153. The Court of Common Pleas of Lycoming County has determined that Dr. Stone's rights under the Fifth Amendment, Self-Incrimination, were violated, See Exhibit "B".

154. Dr. Stone's statements to Defendant Waltman and Defendant Wool during the four and one-half (4 ½) hour seizure were coerced and not voluntarily made in violation of the Fifth Amendment of the United States Constitution.

155. The subject incriminating statements formed the basis, or were a significant basis, in the filing of the criminal charges against Dr. Stone, Exhibit "A".

156. The Commonwealth continues to pursue the use of Dr. Stone's statements made to Defendant Wool and Defendant Waltman through proceedings in the Pennsylvania Superior Court, despite said statements being the product

of clear Constitutional violations under the Fifth Amendment, Self-Incrimination of the Unites States Constitution.

157. In addition, Dr. Stone, on at least three (3) occasions, during his interrogation by Defendant Wool, requested to speak with legal counsel.

158. Despite that request, which is safeguarded by the Miranda warnings, Defendant Wool failed and refused to afford Dr. Stone legal counsel, nor did he terminate the interrogation.

159. The Constitutional violations under the Fifth Amendment set forth above, producing coerced and incriminating statements made by Dr. Stone, caused the filing of criminal charges against him and the eventual loss of his medical license.

160. Both Defendants, as set forth above, violated Dr. Stone's rights under the Fifth Amendment to the United States Constitution and Article One, Section Nine of the Pennsylvania Constitution.

161. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

   (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

   (b) Lost employee benefits through his employers;

   (c) Pain and suffering;

28

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

**COUNT IV**

**42 USC §1983**

**SUBSTANTIVE AND PROCEDURAL DUE PROCESS**

**(FIFTH AMENDMENT SELF-INCRIMINATION)**

**VS**

**DEFENDANT WOOL AND DEFENDANT WALTMAN**

162. Paragraphs one (1) through one hundred and sixty-one (161) are incorporated herein as if set forth at length.

163. The Defendants were at all times relevant hereto state actors.

164. The Defendants, knowing that they were required to, failed and refused to, administer the required Miranda warnings to Dr. Stone while he was in custody for a four and one-half (4 ½) hour duration.

165. Dr. Stone allegedly made certain incriminating statements to one or both Defendants during his four and one-half (4 ½) hour detention without being afforded his Miranda warnings in violation of his rights under the Fifth Amendment, Self-Incrimination, of the United States Constitution.

166. The Court of Common Pleas of Lycoming County has determined that Dr. Stone's rights under the Fifth Amendment, Self-Incrimination, were violated, See Exhibit "B".

167. Dr. Stone's statements to Defendant Waltman and Defendant Wool during the four and one-half (4 ½) hour seizure were coerced and not voluntarily made in violation of the Fifth Amendment of the United States Constitution.

168. The subject incriminating statements formed the basis, or were a significant basis, in the filing of the criminal charges against the Defendant, Exhibit "A".

169. The Commonwealth continues to pursue the use of Dr. Stone's statements made to Defendant Wool and Defendant Waltman, through proceedings in the Pennsylvania Superior Court, despite said statements being the product

of clear Constitutional violations under the Fifth Amendment, Self-Incrimination, of the United States Constitution.

170. In addition, Dr. Stone, on at least three (3) occasions, during his interrogation by Defendant Wool, requested to speak with legal counsel.

171. Despite that request, which is safeguarded by the Miranda warnings, Defendant Wool failed and refused to afford Dr. Stone legal counsel nor did he terminate the interrogation.

172. The Constitutional violations under the Fifth Amendment set forth above, producing coerced and incriminating statements made by Dr. Stone, caused the filing of criminal charges against him and the eventual loss of his medical license.

173. Both Defendants, as set forth above, violated Dr. Stone's rights under the Fifth Amendment to the United States Constitution and Article One, Section Nine of the Pennsylvania Constitution.

174. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

31

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT V

## 42 USC §1983

## PROCEDURAL DUE PROCESS

## VS

## DEFENDANT ROBERT SMITH, DEFENDANT WILLIAM FRANTZ, DEFENDANT WALTMAN, DEFENDANT JOHN WETZEL, DEFENDANT CORRECT CARE SOLUTIONS, LLC (CCS), DEFENDANT WENDY NICHOLAS, AND DEFENDANT LESLIE BLAIR-MORRISON

175. Paragraphs one (1) through one hundred and seventy four (174) are incorporated herein as if set forth at length.

176. The Defendants were at all times relevant hereto state actors.

177. Dr. Stone was employed as Chief Medical Director by Correct Care
Solutions, LLC, (hereinafter "CCS") at SCI Muncy.

178. CCS employees at SCI Muncy were required to adhere to the rules of the
Pennsylvania Department of Corrections to maintain their security clearance
at said Institution.

179. The Pennsylvania Department of Corrections adopted a policy and
procedure regarding prison rape or sexual assault allegations.

180. The Pennsylvania Department of Corrections adopted the Prison Rape
Elimination Act of 2003 (PREA), which was in effect at all times relevant
hereto.

181. The guidelines of PREA are clear as to what procedure needs to be
followed in the event of a sexual assault allegation.

182. On or about May 29, 2015, there was an allegation of sexual assault on
Inmate Chelsey Camp, as only reported by her roommate, Cheryl
Baskerville.

183. The Defendants failed and refused to follow PREA protocol by not having
Inmate Camp taken for a sexual assault examination, by failing to
immediately preserve relevant videotape, by failing to inspect Inmate CC's
medical records, and in authorizing or permitting non-PREA personnel,

Defendant Wendy Nicholas and/or Defendant Leslie Blair-Morrison to interview Cheryl Baskerville, the alleged eyewitness to the assault.

184. Defendant CCS, at all times relevant, were aware that Dr. Stone was not afforded his required Procedural Due Process as to PREA, yet never intervened to afford Dr. Stone the Due Process to which he was entitled and, in fact, terminated his employment.

185. As a result of the PREA investigation, or lack thereof, Dr. Stone lost his security clearance at SCI Muncy and his employment with CCS.

186. As a result of the Fourteenth Amendment to the United States Constitution, Procedural Due Process violations, Dr. Stone lost his right to employment and his liberty, as he was seized on June 3, 2015 by a four and one-half (4 ½) hour detention, without probable cause.

187. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

    (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

    (b) Lost employee benefits through his employers;

    (c) Pain and suffering;

    (d) Severe emotional harm;

    (e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT VI

## 42 USC §1983

## SUBSTANTIVE DUE PROCESS

## VS

## DEFENDANT ROBERT SMITH, DEFENDANT WILLIAM FRANTZ, DEFENDANT WALTMAN, DEFENDANT JOHN WETZEL, DEFENDANT CORRECT CARE SOLUTIONS, LLC (CCS), DEFENDANT WENDY NICHOLAS, AND DEFENDANT LESLIE BLAIR-MORRISON

188. Paragraphs one (1) through one hundred and eighty-seven (187) are incorporated herein as if set forth at length.

189. The Defendants were at all times relevant hereto state actors.

190. Dr. Stone was employed as a physician by Correct Care Solutions, LLC, (hereinafter "CCS") at SCI Muncy.

191. CCS employees at SCI Muncy were required to adhere to the rules of the Pennsylvania Department of Corrections in order to maintain their security clearance at said Institution.

192. The Pennsylvania Department of Corrections adopted a policy and procedure regarding prison rape or sexual assault allegations.

193. The Pennsylvania Department of Corrections adopted the Prison Rape Elimination Act of 2003 (PREA), which was in effect at all times relevant hereto.

194. The guidelines of PREA are clear as to what procedure needs to be followed in the event of a sexual assault allegation.

195. On or about May 29, 2015, there was an allegation of sexual assault on Inmate Chelsey Camp, as only reported by her roommate, Cheryl Baskerville.

196. The Defendants failed and refused to follow PREA protocol by not having Inmate Camp taken for a sexual assault examination, by failing to immediately preserve relevant videotape, by failing to inspect Camp's medical records, and in authorizing or permitting non-PREA personnel,

namely Defendant Wendy Nicholas and/or Defendant Leslie Blair-Morrison, to interview Cheryl Baskerville, the alleged eyewitness to the assault.

197. Defendant CCS, at all times relevant, was aware that Dr. Stone was not afforded his required rights under PREA, yet never intervened to afford Dr. Stone the Due Process to which he was entitled.

198. As a result of the PREA investigation, or lack thereof, Dr. Stone lost his security clearance at SCI Muncy and his employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

199. As a result of the Fourteenth Amendment to the United States Constitution, Substantive Due Process violation, Dr. Stone lost his right to employment and his liberty, as he was seized on June 3, 2015 by a four and one-half (4 ½) hour detention, without probable cause.

200. The actions by the above-named Defendants were arbitrary and egregious.

201. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

   (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

   (b) Lost employee benefits through his employers;

   (c) Pain and suffering;

   (d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT VII

## 42 USC §1983

## FOURTEENTH AMENDMENT

## SUBSTANTIVE DUE PROCESS

## VS

## DEFENDANT WOOL, DEFENDANT WALTMAN,

## DEFENDANT SHIREY AND

## DEFENDANT AARON BIICHLE

202. Paragraphs one (1) through two hundred one (201) are incorporated herein as if set forth at length.

203. The Defendants were at all times relevant hereto state actors.

204. Defendants Wool, Waltman, Shirey, and Biichle illegally searched or aided in the search of Dr. Stone's truck, which resulted in the inspection of and seizure of a notebook allegdly containing certain writings between he and Inmate Camp.

205. Defendant Wool on the relevant date requested a directive from Defendant Assistant District Attorney Aaron Biichle, who approved and authorized his conduct on said date concerning the search and seizure of Dr. Stone's notebook.

206. The search of Dr. Stone's vehicle was without probable cause, was obtained without a search warrant, without voluntary consent, and while Dr. Stone was detained/seized without probable cause.

207. The search of Dr. Stone's vehicle was deemed Unconstitutional under the Fourth Amendment of the United States Constitution in a Court of Common Pleas.  See Exhibit "B".

208. The search of Dr. Stone's vehicle was Unconstitutional under the Fourth Amendment of the United States Constitution and Article One, Section Eight of the Pennsylvania Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

209. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT VIII

## 42 USC §1983

## CIVIL CONSPIRACY TO DEPRIVE PLAINTIFF OF CONSITUTIONAL

## RIGHTS, PRIVILEDGES, AND IMMUNITIES

## VS

## DEFENDANT ROBERT SMITH, DEFENDANT WENDY NICHOLAS,

## DEFENDANT LESLIE BLAIR-MORRISON, DEFENDANT WOOL,

## DEFENDANT WALTMAN, DEFENDANT WILLIAM FRANTZ,

## DEFENDANT JOHN WETZEL,

## DEFENDANT CHERYL BASKERVILLE, AND

## DEFENDANT CHELSEY CAMP

210. Paragraphs one (1) through two hundred nine (209) are incorporated herein as if set forth at length.

211. All of the above-named Defendants conspired to violate Dr. Stone's rights under the Fourth Amendment, Fifth Amendment and Fourteenth Amendment of the United States Constitution in an effort to terminate his security clearance at SCI Muncy and therefore cause a loss of his employment at CCS.

212. Defendant Leslie Blair-Morrison, in furtherance of having Dr. Stone falsely arrested, illegally searched, and having his employment terminated at

SCI Muncy, assisted in the illegal detention of Dr. Stone by commencing with his illegal detention and by engaging in an investigative capacity under PREA, having spoken to Inmate CC, although Blair-Morrison had no training or skill in investigation, nor was she authorized to conduct any part of a PREA investigation.

213. Defendant Wendy Nicholas, who oversees security at SCI Muncy, in furtherance of having Dr. Stone falsely arrested, illegally searched, and having his employment terminated at SCI Muncy, assisted in his illegal detention, engaged in an investigative capacity under PREA, although not trained to do so, and was aware and authorized the deprivation of Dr. Stone's rights under the Fourth Amendment, Fifth Amendment, Sixth Amendment, Fourteenth Amendment and the Privileges and Immunities Clause of the United States Constitution.

214. Defendant Robert Smith, in furtherance of having Dr. Stone falsely arrested, illegally searched and losing his employment at SCI Muncy, failed to properly supervise and train security and PREA personnel at SCI Muncy, specifically allowing Defendant Waltman to conduct PREA investigations without proper training, namely, the knowledge and administration of Miranda warnings, knowledge of investigative procedures, strict adherence to all requirements of PREA, including, but not limited to securing all

available videotape footage in any way pertaining to the alleged allegations

of Inmate CC and Cheryl Baskerville, securing the necessary releases of

medical information from Inmate CC so as to determine the validity of her

claims that she was unconscious at the time of the alleged incident, and

prohibiting non-PREA personnel, Defendant Blair-Morrison, to influence

and interview witnesses.

215. Furthermore, Defendant Smith, in furtherance of the aforementioned

conspiracy, failed to properly train and supervise the PREA officer,

Defendant William Frantz, so as to thoroughly follow the policy and dictates

of PREA, namely, securing all available evidence, properly interviewing

witnesses, securing Inmate CC's medical records, and being trained in the

administration of all PREA policies, including the administration of Miranda

warnings.

216. Defendant John Wetzel, in furtherance of the above-referenced conspiracy

at SCI Muncy, failed to ensure that Defendant Waltman and Defendant

Frantz were properly trained in PREA investigative techniques/procedures,

namely Defendant Waltman and Defendant Frantz falsely arrested Dr. Stone,

failed to provide him with Miranda warnings, allowed witnesses to be

influenced, and failed to secure all available evidence as required under

PREA protocol and policies.

217. Defendant William Frantz, in furtherance of the above-referenced conspiracy assisted in Dr. Stone's illegal arrest and illegal search by failing to intervene in the PREA investigation to take appropriate steps to secure all available evidence, interview witnesses without interference, and to follow all protocol of PREA, including the administration of Miranda warnings.

218. Defendants Cheryl Baskerville and Chelsea Camp, in furtherance of the above-referenced conspiracy, made completely and utterly false allegations against Dr. Stone that he had sexually assaulted Defendant Camp.

219. The above-named Defendants disliked Dr. Stone's methods, (holistic medicine), his attention to detail, and his attitude of treating the inmates as "human beings" and one or more conspired to violate his rights as set forth above.

220. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

    (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

    (b) Lost employee benefits through his employers;

    (c) Pain and suffering;

    (d) Severe emotional harm;

    (e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT IX

## WRONGFUL TERMINATION (PENDENT STATE CLAIM)

## VS

## DEFENDANT CORRECT CARE SOLUTIONS, LLC (CCS)

221. Paragraphs one (1) through two hundred twenty (220) are incorporated herein as if set forth at length.

222. Dr. Stone, at all times relevant hereto, was employed by CCS as a Chief Medical Officer at SCI Muncy.

223. Dr. Stone executed a contract for employment with CCS which he cannot locate, but upon information and belief, required due process prior to termination of employment.

224. The Defendant breached the contract with Dr. Stone by terminating him from employment without just cause due process, as Dr. Stone was fired for losing his security clearance when the Defendants, knowing that Dr. Stone was not afforded a full and fair PREA investigation by SCI Muncy, terminated his employment without further investigation.

225. As a proximate result of the Defendant's actions set forth above, the Plaintiff has been damaged as follows:

    (a) Approximately $540,000.00 in lost salary from loss of employment which deprivation is continuing to date; and,

    (b) Incidental and consequential damages as a result of the breach of contract.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

<u>**COUNT X**</u>

<u>**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**</u>

<u>**(PENDENT STATE CLAIM)**</u>

<u>**VS**</u>

<u>**DEFENDANT LESLIE BLAIR-MORRISON, DEFENDANT CAMP AND**</u>

<u>**DEFENDANT BASKERVILLE**</u>

226. Paragraphs one (1) through two hundred twenty five (225) are incorporated herein as if set forth at length.

227. Defendants Blair-Morrison, Camp and Baskerville knew Dr. Stone was a contract employee with CCS.

228. Defendant Blair-Morrison acted outside the scope of her position as CHCA, by her actions of undertaking investigative responsibilities of interviewing Defendant Baskerville, taking and encouraging a statement from her as well as escorting Dr. Stone to Defendant Waltman for extended detention (a violation of his Constitutional Rights).

229. The Defendants interfered with Dr. Stone's business relationship with CCS by aiding in his seizure and false imprisonment, knowing that Dr. Stone would lose his security clearance and his employment with CCS.

230. In addition, the Defendant Blair-Morrison tortiously interfered with the PREA investigation, well outside her employment responsibilities, so as to ensure that Dr. Stone's employment at SCI Muncy was terminated.

231. The Defendants, Camp and Baskerville, SCI Muncy inmates, tortiously interfered with the Plaintiff's employment by fabricating versions of events, so as to cause Dr. Stone to lose his employment.

232. Defendant Blair-Morrison, knowing that Baskerville was making false accusations against Dr. Stone, met with her and took a statement from Baskerville so as to support Dr. Stone's termination from employment at SCI Muncy.

233. As a proximate result of the Defendant's actions set forth above, the Plaintiff has been damaged as follows:

   (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

   (b) Lost employee benefits through his employers;

   (c) Pain and suffering;

   (d) Severe emotional harm;

   (e) Psychiatric and psychological harm;

   (f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

### COUNT XI

### DEBORAH L. STONE

### VS

### DEFENDANT CAMP AND DEFENDANT BASKERVILLE

### LOSS OF CONSORTIUM

234. Paragraphs one (1) through two hundred and thirty-three (233) are incorporated herein as if set forth at length.

235. At the time of the incident complained of in Dr. Stone's Complaint, the Plaintiffs were married and that the Plaintiffs continue to be married.

236. That as a result of the wrongful acts of the Defendants, Dr. Stone was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

237. That all the aforesaid injuries and damages were caused solely and proximately by the negligence of the Defendants herein.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, and costs.

## COUNT XII

## 42 USC §1983

## EQUAL PROTECTION CLAUSE

## VS

## DEFENDANT WETZEL, DEFENDANT SMITH,

## DEFENDANT LESLIE BLAIR-MORRISON,

## DEFENDANT WENDY NICHOLAS, DEFENDANT WILLIAM FRANTZ,

## AND DEFENDANT WALTMAN

238. Paragraphs one (1) through two hundred thirty-seven (237) are incorporated herein as if set forth at length.

239. The Defendants were at all times relevant hereto state actors.

240. Inmate CC and alleged eyewitness, Inmate Cheryl Baskerville made a PREA Complaint against Dr. Stone.

241. As stated above, the PREA process as it related to Dr. Stone was defective, deficient, and not in accordance with the PREA policy/guidelines.

242. Despite the flawed PREA investigation of Dr. Stone, he lost his security clearance at SCI Muncy and his employment with CCS, Corporate Creations Inc., Wexford Health Sources, Inc., and Corizon Health, Inc.

243. In addition, despite a fatally flawed PREA process, Dr. Stone was charged with crimes. See Exhibit "A".

244. Dr. Stone was not treated equally as other SCI Muncy employees accused of sexual assault, as other accused employees, who often times have admitted wrongdoing, have not been disciplined or prosecuted criminally.

245. The Defendants violated the Equal Protection Clause of the United States Constitution.

246. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

    (a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

    (b) Lost employee benefits through his employers;

    (c) Pain and suffering;

    (d) Severe emotional harm;

    (e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and

recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.

## COUNT XIII

## CONSPIRACY TO WRONGFULLY TERMINATE EMPLOYMENT

## (PENDENT STATE CLAIM)

## VS

## DEFENDANT LESLIE BLAIR-MORRISON, DEFENDANT WENDY

## NICHOLAS, DEFENDANT CHELSEY CAMP,

## AND DEFENDANT CHERYL BASKERVILLE

247. Paragraphs one (1) through two hundred and forty-six (246) are

incorporated herein as if set forth at length.

248. Defendant Camp and/or Defendant Baskerville made false and scandalous

PREA reports about Dr. Stone so as to terminate his employment with CCS

at SCI Muncy.

249. Defendant Blair-Morrison worked closely with Dr. Stone on a daily basis.

250. Defendant Blair-Morrison was aware of the false and scandalous
accusations by Defendant Camp and/or Defendant Baskerville about Dr.
Stone having sexually assaulted Defendant Camp, however, both, in an
effort to get Dr. Stone fired from his position as Chief Medial Director at
SCI Muncy, confirmed with prison officials and/or officials of CCS that the
alleged assault was likely to have occurred.

251. Defendant Blair-Morrison acted outside the scope of her position as
CHCA, by her actions of undertaking investigative responsibilities of
interviewing Defendant Baskerville, taking and encouraging a statement
from her as well as escorting Dr. Stone to Defendant Waltman for extended
detention (a violation of his Constitutional Rights).

252. Defendant Blair-Morrison, knowing that Baskerville was making false
accusations against Dr. Stone, met with her and took a statement from
Baskerville so as to support Dr. Stone's termination from employment at
SCI Muncy.

253. All Defendants conspired for one (1) unlawful purpose: to have Dr. Stone
lose his employment at CCS.

254. As a result of the conspiracy, Dr. Stone lost his employment at CCS.

255. As a proximate result of the Defendants' actions set forth above, the

Plaintiff has been damaged as follows:

   (a) Lost employee benefits through his employers; and,

   (b) Punitive damages.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of

the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees,

and punitive damages.


### COUNT XIV

### 42 USC §1983

### DEFENDANT WETZEL,  DEFENDANT SMITH AND

### DEFENDANT BLOCKER


256. Paragraphs one (1) through two hundred and fifty-five (255) are

incorporated herein as if set forth at length.

257. Defendants Wetzel and Smith failed to ensure that PREA protocol/policies

were properly followed at SCI Muncy, insofar as they failed to properly train

Defendant Waltman and Defendant Frantz to administer the PREA policies,

namely, both Defendant Waltman and Defendant Frantz were unaware of

how to administer Miranda warnings, were unaware of how to question a

contract employee such as Dr. Stone, were unaware of and not properly trained in securing all available evidence for the PREA investigation, including witness statements, available and material videotape footage, and the alleged victim's medical records, were unaware of necessity to and not properly trained to immediate transportation of the alleged victim of the sexual assault to a medical facility for a sexual assault investigation.

258. Defendant Blocker failed to ensure that Wool, a Pennsylvania State Trooper, was properly trained and supervised, so as to properly investigate and administer the law, as Defendant Wool was not properly trained and supervised in the administration of "Miranda warnings" and "custodial detention" under the Fifth Amendment of the United States Constitution.

259. The subject failures in Paragraph 258, proximately caused the filing of criminal charges against Dr. Stone, the loss of his employment with CCS and the loss of his medical license.

260. Defendants Frantz and Waltman, who were responsible for investigation of PREA complaints at the time when Dr. Stone was discharged from employment at SCI Muncy, were improperly trained and supervised concerning all PREA rules, regulations and protocol.

261. As a proximate result of the Defendants' actions set forth above, the Plaintiff has been damaged as follows:

(a) Approximately $540.000 in lost salary from loss of employment which deprivation is continuing to date;

(b) Lost employee benefits through his employers;

(c) Pain and suffering;

(d) Severe emotional harm;

(e) Psychiatric and psychological harm;

(f) Punitive damages, as the Defendants' conduct was reckless and recklessly indifferent to Dr. Stone's rights; and,

(g) Reasonable Attorney's fees; and,

(h) Reputational harm.

**WHEREFORE**, the Plaintiff demands damages in the amount in excess of the Jurisdictional limit plus delay damages, interest, costs, Attorney's fees, and punitive damages.

## COUNT XV

## ATTORNEY'S FEES

## 42 U.S.C. §1988

## DEFENDANT SHAWN WALTMAN,

## DEFENDANT JAMES WOOL,

## DEFENDANT CORRECT CARE SOLUTIONS, LLC,

## DEFENDANT LESLIE BLAIR-MORRISON,

## DEFENDANT WENDY NICHOLAS, DEFENDANT WILLIAM FRANTZ,

## DEFENDANT JOHN WETZEL, DEFENDANT MICHAEL SHIREY,

## DEFENDANT AARON BIICHLE, DEFENDANT ROBERT SMITH,

## DEFENDANT TYREE C. BLOCKER, DEFENDANT CHELSEY CAMP,

## DEFENDANT CHERYL BASKERVILLE

262. Paragraphs one (1) through two hundred and sixty-one (261) are incorporated herein as if set forth at length.

263. The Plaintiffs have been required to, and will be required to, expend Attorney's fees to prosecute the clear Constitutional violations and/or violations of Federal law by the all Defendants herein.

264. The Plaintiffs seek recovery of all Attorney's fees under 42 U.S.C. §1988 against all Defendants herein.

**WHEREFORE**, the Plaintiffs respectfully request the Court award

reasonable Attorney's fees and costs pursuant to 42 U.S.C. §1988.

Respectfully submitted,

S:/ Gregory T. Moro, Esquire
Gregory T. Moro, Esquire
105 E. Market Street
Danville, PA 17821
(570) 784-1010
Attorney ID # 56089

S:/ Hope R. Moro, Esquire
Hope R. Moro, Esquire
105 E. Market Street
Danville, PA 17821
(570) 784-1010
Attorney ID # 61705