## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD J. STONE AND DEBORAH L. STONE,** | **:** | **No. 4:17-CV-0864** |
| **Plaintiffs** | **:** | |
| | **:** | **Honorable John Jones, III** |
| **v.** | **:** | |
| | **:** | **Electronically Filed Document** |
| **SHAWN WALTMAN, JAMES WOOL, CORRECT CARE SOLUTIONS,LLC, LESLIE BLAIR-MORRISON, WENDY NICHOLAS, WILLIAM FRANTZ, JOHN WETZEL, MICHAEL SHIREY, AARON BIICHLE, ROBERT SMITH, TYREE C. BLOCKER, CHELSEY CAMP and CHERYL BASKERVILLE,** | **:** | |
| **Defendants** | **:** | *Complaint Filed 5/16/17* |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Plaintiff Doctor Donald Stone ("Stone") was a physician employed by Correct Care Solutions ("CCS") and contracted to work at SCI Muncy. *Amended Complaint*, ¶22.

2.     Stone was not an employee of the Department or SCI Muncy. *Stone*[1], 14: 25-15: 3; 16: 11-19.

_____

[1] "Stone" refers to the deposition of Donald Stone, a true and correct copy of which is attached hereto as Exhibit 1.

3.     Stone's position at SCI Muncy was dependent upon a security clearance. *Stone*, 17: 9-18.

4.     Defendant John Wetzel is the Secretary of the Department of Corrections ("Department"). *Amended Complaint*, ¶10.

5.     Defendant Robert Smith was, at all relevant times, the Superintendent of SCI Muncy. *Amended Complaint*, ¶11.

6.     Defendant William Waltman was, at all relevant times, the Security Captain at SCI Muncy. *Amended Complaint*, ¶2.

7.     Defendant Leslie Blair-Morrison was, at all relevant times, the Corrections Health Care Administrator ("CHCA").  *Amended Complaint*, ¶5.

8.     The Corrections Health Care Administrator ("CHCA") is not medical personnel. *Blair-Morrison*[2], 7: 15-20.

9.     The CHCA does not have authority over contracted medical personnel, specifically doctors, but does monitor their hours for compliance with any contract in place. *Blair-Morrison*, 8: 17-18.

10.    Defendant William Frantz was, at all relevant times, the Prison Rape Elimination Act ("PREA") Compliance Manager. *Amended Complaint*, ¶7.

---

[2] "Blair-Morrison" refers to the deposition of Leslie Blair-Morrison, a true and correct copy of which is attached hereto as Exhibit 2.

11.    The PREA Compliance Manager does not participate in PREA investigations. *Frantz*[3], 17: 12-18.

12.    The PREA Compliance Manager is responsible for administrative tasks related to compliance with the policy, including reporting to the state-wide PREA Coordinator, ensuring the inmate is monitored for at least ninety days, overseeing training at the facilities, and reviewing the investigation packet once a PREA investigation is completed. *Frantz*, 10: 5-20; *Exhibit P-1*, Section 2A, ¶b[4].

13.    Defendant Michael Shirey was, at all relevant times, a corrections officer at SCI Muncy. *Amended Complaint*, ¶8.

14.    Defendant Tyree Blocker was formerly the Commissioner of the Pennsylvania State Police, nominated on August 10, 2015. Legislative Journal at 1404.[5]

15.    Defendant William Wool was, at all relevant times, a trooper with the Pennsylvania State Police. *Amended Complaint*, ¶3.

---

[3] "Frantz" refers to the deposition of William Frantz, a true and correct copy of which is attached hereto as Exhibit 3.

[4] Exhibit P-1 refers to the PREA policy in effect in June 2015, a true and correct copy of which is attached hereto as Exhibit 4. The exhibit is named "P-1" as it was introduced by plaintiff at multiple depositions.

[5] "Legislative Journal" refers to the official record of Commonwealth legislative proceedings on December 9, 2015, a true a correct copy of which is attached as Exhibit 5.

**Prison Rape Elimination Act**

16.     PREA is a policy that prohibits any form of sexual abuse/sexual harassment of an inmate and contains procedures on reporting, investigating, and responding to allegations made under PREA. The policy went in to effect June 30, 2014. *Waltman*[6], 19: 8-11; *Exhibit P-1*.

17.     PREA requires all staff at Department facilities to receive training on PREA. *Exhibit P-1*, Section 2E; *Frantz*, 8: 19-22.

18.     Staff at the SCI Muncy, including Defendant Waltman, received training on PREA by the Department from several instructors in 2014. *Waltman*, 20: 5-25; 21: 1-14.

19.     Every complaint or allegation of sexual harassment or sexual abuse must be investigated by the Security Office. Exhibit P-1, Section 4 and Section 6; *Waltman*, 27: 6-8.

20.     Once a PREA allegation is made the alleged abuser must be immediately separated from the alleged victim and they can take no chances of them encountering each other.  *Waltman*, 167: 1-8; *Exhibit P-1*, Section 5A(2) .

---

[6] "Waltman" refers to the deposition of Shawn Waltman, a true and correct copy of which has been attached hereto as Exhibit 6.

21.     Pursuant to the PREA policy, Waltman contacted Wool regarding the sexual assault allegation. *P-1*, Section 6B(2); *Waltman*, 83:19-84:1.

**June 3, 2015**

22.     On June 3, 2015 Chelsea Camp ("Camp") and Cheryl Baskerville ("Baskerville") were cell mates at SCI Muncy. *Wool*[7], 67:9-13; *Blair-Morrison*, 25: 18.

23.     Baskerville reported that Stone had touched Camp inappropriately by reaching up her gown to touch her vaginal area and breast while Camp was unconscious. *Waltman*, 59: 4-25; 60: 1; 11-14; 63: 24-25; *Wool*, 30: 3-8.

24.     As Security Captain at the time, Waltman investigated the PREA allegation made by Camp against Stone. *Waltman*, 32: 15-17; 33: 4-12.

25.     Waltman contacted Blair-Morrison and asked her to speak with Baskerville. *Blair-Morrison*, 16: 7-22.

26.     Blair-Morrison did not interview Baskerville or have a formally prepared list of question. Blair-Morrison, 16: 10-20.

27.     Waltman interviewed Baskerville. *Waltman*, 57: 21-25; 58: 1-2.

28.     Waltman interviewed Camp. *Waltman*, 62: 6-11.

---

[7] "Wool" refers to the deposition of Trooper James Wool, a true and correct copy of which is attached hereto as Exhibit 7.

29.   Waltman contacted Blair-Morrison to ask Stone to come to the Security Office.  *Waltman*, 71:21-24; 97:4-7; *Blair-Morrison*, 33: 17-18.

30.   Waltman did not ask Blair-Morrison to "escort" Stone to the security office. *Blair-Morrison*, 34:5-7.

31.   Blair-Morrison asked Stone if he knew where security was and he told her he did not, so Blair-Morrison walked with him. Blair-Morrison, 34: 8-17; *Waltman*, 72: 15-17.

32.   Stone was questioned in the Security Office. *Waltman*, 74: 8-14; Amended Complaint, *generally*.

33.   Wool arrived and interviewed Stone at SCI Muncy. *Wool*, 31:1-5.

34.   The prison internal investigation was separate from any criminal investigation. *Wool*, 100: 5-9.

35.   At one point, Shirey accompanied Stone to the bathroom. *Waltman*, 138: 5-12; 167: 1-8.

36.   Stone admitted to kissing Camp. Amended Complaint, Doc. 25-1 pp. 63 and 68; *Stone*, 46:16-20; Wool, 31:6-12; *Waltman*, 75: 16-23; 148:15-19; 149:19-22; 150:11-15.

37.   Stone gave Camp food items. *Stone*, 27:8-10.

38.    Giving food to an inmate patient is a violation of Department policy. Stone, 29:23-25; *Waltman*, 74: 25- 75: 1-7; 169: 19-25; 170: 1-4.

39.    Stone admitted to sharing personal information with Camp during his idle time with her. *Stone*, 44:17-19.

40.    Stone admitted to exchanging notes with Camp in a notebook regarding reflections on feelings, needs, ambitions, what to do next, and to fantasize of a normal relationship so healing could be discussed. *Stone*, 45: 8-11.

41.    Writing notes to inmate patients is against Department policy. *Stone*, 32:13-19; *Waltman*, 169: 1-16.

42.    It was believed that the notebook was in his car in the prison parking lot. *Wool*, 23: 19-24; 25: 19-23.

43.    Wool asked Stone to consent to a search of his car, he agreed and signed a consent. *Amended Complaint*, Doc. 25-1 pg. 63; *Wool*, 32:7-12; *Stone*, 42:19-21.

44.    Wool searched Stone's car and found a notebook. *Wool*, 43:12-17.

45.    Shirey assisted Wool in the search of Stone's car. *Amended Complaint*, Doc. 25-1 pg. 63; *Wool*, 52:14-20.

46.    Stone was not under arrest on June 3, 2015, nor did Wool have the intent to arrest Stone.  *Wool*, 38:20-21; 54:12-14.

47.    Waltman found Stone had fraternized with Camp by giving her material items. *Exhibit P-1*, Section 6B(2); *Waltman*, 82:4-7.

48.    Fraternization is a violation of the Department Code of Ethics. *Waltman*, 154: 11-25; 155: 1-2.

49.    Smith revoked Stone's security clearance on June 3, 2015. *Smith*[8], 36:2-5.

50.    Smith made the decision to revoke Stone's security clearance because there is a need to keep him separated from the institution until a full and complete investigation was conducted and finalized. *Smith*, 38:23-39:3.

51.    Smith made the decision to have Stone "walked" off the institution grounds and to have him relinquish his keys.  Smith, 24:9-15; *Waltman*, 139: 19-25..

52.    Waltman escorted Stone of SCI Muncy's property.  *Stone*, 55:6-8.

53.    Blair-Morrison never talked to Correct Care Solutions ("CCS") about the allegations against Stone. *Blair-Morrison*, 58:4-6.

54.    Blair-Morrison did not inform CCS when the investigation began, nor did she tell them of its conclusion. *Blair-Morrison*, 58:4-6.

55.    CCS terminated Stone's employment. *Amended Complaint*, ¶21.

---

[8] "Smith" refers to the deposition of Robert Smith, a true and correct copy of which is attached hereto as Exhibit 8.

56.     Stone does not know any other employee at SCI Muncy that have been accused of sexual assault. Stone, 49: 14-17.

57.     Stone does not know how any employees accused of sexual assault at SCI Muncy have been treated. Stone, 49: 18-20.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   *s/ Allison L. Deibert*

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 705-2532
adeibert@attorneygeneral.gov

ALLISON L. DEIBERT
Deputy Attorney General
Attorney ID 309224

KAREN M. ROMANO
Chief Deputy Attorney General
Civil Litigation Section

Date:   February 27, 2020

*Counsel for DOC & PSP Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD J. STONE AND DEBORAH L. STONE,** | : | **No. 4:17-CV-0864** |
| **Plaintiffs** | : | |
| | : | **Honorable John Jones, III** |
| **v.** | : | |
| | : | **Electronically Filed Document** |
| **SHAWN WALTMAN, JAMES WOOL, CORRECT CARE SOLUTIONS,LLC, LESLIE BLAIR-MORRISON, WENDY NICHOLAS, WILLIAM FRANTZ, JOHN WETZEL, MICHAEL SHIREY, AARON BIICHLE, ROBERT SMITH, TYREE C. BLOCKER, CHELSEY CAMP and CHERYL BASKERVILLE,** | : : : : : : : : : : : | |
| **Defendants** | : | *Complaint Filed 5/16/17* |

## CERTIFICATE OF SERVICE

I, Allison L. Deibert, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on February 27, 2020, I caused to be served a true and correct copy of the foregoing document titled DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS to the following:

**VIA ECF:**
**Gregory T. Moro**
**Hope R. Moro**
Moro & Moro Law
105 E. Market Street
Danville, PA  17821
*Counsel for Plaintiff*

s/ *Allison L. Deibert*
**ALLISON L. DEIBERT**
**Deputy Attorney General**